152 N.J. Super. 382 (1977)
377 A.2d 1239
STATE OF NEW JERSEY, PLAINTIFF,
v.
WALTER ROBERT CONQUEST. DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided July 15, 1977.
*384 Mr. Arthur V. Guerrera, Assistant Prosecutor, for the State.
Mr. Gerard C. Gross for defendant.
NARROW, J.C.C., Retired and Temporarily Assigned on Recall.
Defendant, having been tried on an eight-count indictment, was found guilty by a jury of the last four counts. He is challenging his conviction on the last three counts, contending that the statute on which the sixth count is based was unconstitutionally applied to him and that his convictions on the seventh and eighth counts are inconsistent.

Sixth Count Conviction
This issue as to the sixth count conviction does not appear to have been passed on by our courts.
All eight counts of the indictment are the result of a firebombing of the home of Jesse Williams wherein a person by the name of Glen James was also living. Glen James had testified as a material witness for the State in May 1976 in a trial in which defendant's brother was convicted of a double murder. It was the theory of the State's case that in order *385 to get even with Glen James for so testifying defendant conspired with and induced two juveniles to firebomb the home where James was residing. The firebombing was committed by the two juveniles on August 14, 1976, resulting in the home being completely destroyed and a young child who was spending the night there being burned to death. The two juveniles then went to defendant's residence to receive payment of the $100 they had been promised, but defendant shunted them aside and did not pay them. However, they returned later and asked defendant for $10, which he gave them to make their getaway. The State's case, insofar as defendant's involvement in the crimes was concerned, almost completely depended on the testimony of one of the juvenile participants.
Defendant denied his involvement in the offenses in any way except that he admitted that he knew the juveniles; in fact, he admitted that the juvenile who did not testify was his nephew, and that they came to him after the firebombing and told him about having firebombed the house and needing some money to get away, and he gave them $10.
The jury acquitted defendant on the first count of the indictment charging him with conspiring with the juveniles to commit arson. The second count charged defendant with arson and the third count charged him with aiding and abetting the juveniles to commit arson, and since both counts charged the same offense the State was permitted to elect on which it chose to proceed at the end of the State's case. The State having elected to proceed on the third count, the second count was dismissed. The jury found defendant not guilty on the third count, and also not guilty on the fourth count charging felony murder.
Defendant was found guilty of the fifth count charging him with assisting the juveniles to escape apprehension, in violation of N.J.S.A. 2A:85-2, and this conviction is not being challenged.
As stated heretofore, defendant is challenging his conviction on the sixth count which charged him with having knowledge *386 of the arson and murder committed by the juveniles and not disclosing and making the same known to an official designated in the statute as soon as he could do so, in violation of N.J.S.A. 2A:97-2. Defendant contends that, in the existing factual circumstances, to require him to comply with this statute would invade his constitutional right not to incriminate himself.
However, the identical question was dealt with in United States v. King, 402 F.2d 694 (9 Cir.1968), in connection with a federal statute which is almost identical with our statute.
In that case defendant was convicted for knowingly and wilfully concealing information concerning the robbery of a national bank, in violation of 18 U.S.C.A. § 4. The facts that the court was entitled to find were that on the afternoon of April 28, 1966 defendant was present in his apartment in Los Angeles when his brother, Burley King, and two other persons, Jackie Dixon and Shirley Weston, commenced a conversation about robbing a bank. Defendant left before the conversation was completed. On the afternoon of April 29, 1966 Weston robbed a bank, taking $783, and then entered a car containing Burley King and Jackie Dixon and made her getaway. Later that day this trio arrived at the apartment where the conversation of the previous day had taken place. Defendant was present when they arrived. The radio was on and defendant heard a broadcast that the bank had been robbed. In defendant's presence Shirley Weston started laughing and said, "I did it." Jackie Dixon added, "It's true, she robbed the bank." Defendant said nothing other than to initially express disbelief that Weston had committed the robbery. Burley King then gave his brother, the defendant, "some" of the money obtained in the robbery.
On the foregoing facts the court, by a vote of 2 to 1, concluded that the Fifth Amendment privilege against self-incrimination stood in the way of convicting defendant for a violation of 18 U.S.C.A. § 4. In its opinion the court said,
*387 The record shows that defendant did not learn of the robbery, and of the principals' participation therein, until he was present with the principals in an apartment on the afternoon of the robbery. Had defendant, as soon as he learned these facts, and before receiving the money, left the apartment and notified the authorities, he would necessarily have attracted police attention to his own association with the principals at that meeting and at the meeting of the previous day when defendant, heard the matter of a possible bank robbery being discussed. He would thus have risked being charged as an aider and abettor, or as an accessory after the fact.
The Government argues, in effect that under the facts defendant could not have been convicted of one of those crimes. Therefore, the Government asserts, he would not have incriminated himself, if he had reported his information to the authorities before he received some of the money from Burley King.
The privilege guaranteed by the Fifth Amendment not only extends to statements that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute an individual for a crime, provided such individual has reasonable cause to fear he might thereby be convicted of that crime. See Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118. See also, United States v. Trigilio, 2 Cir., 255 F.2d 385.
It is noteworthy that the dissenting judge did not disavow the principle on which the majority relied. His dissent was apparently based on his failure to find that disclosure of the offense could have reasonably lead to defendant's prosecution. Thus, he concluded with the following:
Defendant was in no way implicated in the bank robbery until he knowingly received the stolen money. Consequently, the rule stated in Hoffman v. United States, 341 U.S. 479, 456, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) and United States v. Trigilio, 255 F.2d 385 (2d Cir.1958), is not applicable.
Clearly, to require defendant Conquest to report the arson and murder would have attracted attention to his association with the juveniles and would justify his believing that it could constitute a link in the chain of evidence to establish his guilt. The fact of the matter is that he was indicted and put on trial for said offenses. In view of the existing factual background it thus becomes obvious that to have required defendant to comply with N.J. *388 S.A. 2A:97-2 and report the commission of the offense would deprive him of his Fifth Amendment privilege to not incriminate himself. This same privilege which is designated as a "right" is accorded to a defendant under Evid. R. 25 and N.J.S.A. 2A:84A-19 which, in identical language, provide that
* * * every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate * * *.
Additionally, it must be noted that the offense prohibited by the statute is included in the common-law offense of misprision of felony.
At common law misprision of felony is described as
* * * a criminal neglect either to prevent a felony from being committed or to bring the offender to justice after its commission, but without such previous concert with, or subsequent assistance of, him as will make the concealor an accessory before or after the fact. It appears to differ from compounding in that consideration is not necessary to constitute misprision of felony. 15A C.J.S. Compounding Offenses § 2 (2) at 160.
Misprision of felony is the concealment of felony without giving any degree of maintenance to the felon. United States v. Perlstein, 126 F.2d 789 (3 Cir.), cert. den. 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).
In dealing with the forerunner of the present statute, which is in identical language except for the officers to whom the disclosure is to be made, our Supreme Court as early as 1878 stated:
To conceal his knowledge of such an act, and to remain passive and silent was, at the common law, a misprision of felony, and which offense has been, in the passage cited from the crimes act, specialized and defined. [State v. Hann, 40 N.J.L. 228 (1878)]
In the Hann case defendant was tried and convicted of nondisclosure of a murder. He sought to set aside his *389 convictions on two grounds, one of which was that the offense charged against him was that of being an accessory after the fact and could therefore not be tried before conviction of the principal. In his opinion Chief Justice Beasley said:
But this plea must be of no avail, for the charge against him and the facts proved, do not sufficiently incriminate him to make him an accessory to the homicide. All that he did was to see the offense committed and to remain silent. There was no pretense that he did anything in the way of the maintenance of the murder, either before or after the doing of the act, and the consequence is, he was not an accessory, and could not have been punished as such.
It thus clearly appears that a person who actually commits an offense or participates as an accessory before or after the fact cannot be guilty of misprision of felony as defined under the common law or under the statute in question.
The testimony of the State's witnesses tended to prove defendant's participation in the offenses of arson and the resulting murder. The fact that the jury did not convict him is of no moment because his guilt or innocence is not the determining factor as regards his obligation to report; the test, as stated heretofore, is whether such reporting could reasonably constitute a link in the chain of evidence produced against him. But beyond that, defendant was convicted of aiding the juveniles to escape detection and this alone would exonerate him from any obligation to report, since it obviously constitutes the doing of a positive act in the maintenance of the arson and murder.

Seventh and Eighth Count Convictions
The seventh and eighth counts of the indictment charge defendant with contributing to the delinquency of the two juveniles in that he did unlawfully aid, encourage them to set fire to and burn the dwelling house of, etc.
As stated heretofore, defendant was in the third count charged as a participant in the same arson by aiding and *390 abetting the juveniles to commit the arson and he was acquitted on that charge.
The record is clear that the involvement of defendant in the count 3 arson charge and his involvement in the counts 7 and 8 charges of contributing to the deliquency of the minors depended on the same identical evidence and involved proof of the same elements to constitute guilt.
It might be urged that notwithstanding the foregoing, defendant is nevertheless guilty of contributing to their delinquency by giving them money to escape detection. However, counts 7 and 8 do not charge him with that type of misconduct; he is specifically charged with aiding and encouraging them to commit arson.
The State must try the case within the framework of the charges made in the indictment and, on summation must confine itself to the proofs supporting those charges alone. State v. Fuchs, 60 N.J. 564 (1972). Nor, of course, can a verdict be "molded" to convict defendant of a crime other than, but related to, the crime for which he was indicted if the crime actually proved was not charged in the indictment. State v. Holder, 137 N.J. Super. 300 (App. Div. 1975). See Comments under R. 3:7-4.
Accordingly, defendant's motion in arrest of judgment of his conviction on the sixth count of the indictment is hereby granted, based on my determination that N.J.S.A. 2A:97-2 was unconstitutionally applied to him.
However, I doubt whether a motion in arrest of judgment is appropriate to deal with a matter involving an inconsistency in verdicts, this being the ground on which the verdicts in count, 7 and 8 are challenged.
R. 3:21-9 provides:
The court on a defendant's motion shall arrest judgment if the indictment or accusation does not charge an offense or if the charge is based on an invalid or unconstitutional statute or regulation promulgated pursuant to a statute or if the court was without jurisdiction of the offense charged.
*391 However, on the argument of the motion both counsel presented the matter as if the motion were for a judgment of acquittal pursuant to R. 3:18-2. In view of that I am prepared to dispose of the motion on that basis by setting aside the verdicts of guilty and ordering the entry of a judgment of acquittal of defendant on counts 7 and 8. Before doing so, I will permit the prosecutor an opportunity to be heard.