227 N.J. Super. 419 (1988)
547 A.2d 738
STATE OF NEW JERSEY, PLAINTIFF,
v.
NICK PONTELANDOLFO, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN LANDOLFI, DEFENDANT.
Superior Court of New Jersey, Law Division Criminal Part, Gloucester County.
Decided June 24, 1988.
*420 Raymond S. Gurak for plaintiff (W. Cary Edwards, Attorney General of New Jersey, attorney).
Raymond J. Zane for defendant Pontelandolfo (Zane, Lozuke & Parsons, attorneys).
Alfred T. Sanderson for defendant Landolfi.
*421 HOLSTON, J.S.C.
In an effort to combat the incidence of auto theft in New Jersey, the attorney general's office, in conjunction with the state police, initiated a sting operation in which stolen vehicles and parts were bought and later sold to third parties. As a result of this investigative operation, Nicholas Pontelandolfo and John Landolfi were indicted by a state grand jury for: receiving stolen property in violation of N.J.S.A. 2C:20-7, possessing, for an unlawful purpose, vehicles or parts with altered or destroyed identification numbers, contrary to N.J.S.A. 2C:17-6(b) and, as to defendant, Landolfi, forgery in violation of N.J.S.A. 2C:21-1(a). While brought together by the same police operation, each defendant's charges are unrelated to the other. By joint motion, defendants now appear before the court challenging the constitutionality of N.J.S.A. 2C:17-6(b) as applied to them.
Procedurally, defendants stand on different footings. Defendant, Pontelandolfo, was tried before a jury. After prolonged deliberations, the jury was unable to agree upon a verdict and pursuant to R.3:20-1, a new trial was ordered. John Landolfi was also tried before a jury. During the pendency of the trial, the court, on motion by defendant, dismissed count four, a possession charge, in accordance with R.3:18-1. Subsequently, the jury returned a verdict of guilty as to all counts except count five, for which defendant was acquitted.
Defendants now move, pursuant to R.3:10-3 to dismiss those counts of their respective indictments alleging a violation of N.J.S.A. 2C:17-6(b). While defendants filed separate motions, they were joined for disposition since the legal issue presented was identical. Defendants relied upon a single brief filed by defendant, Pontelandolfo, and each defendant relied upon the same testimony of Detective Charles Cooper, a state's witness in both trials, in support of their position.
The statute in question, N.J.S.A. 2C:17-6(b) reads in pertinent part:

*422 b. A person who for an unlawful purpose knowingly possesses any motor vehicle, or any of the parts thereof, from or on which any trademark, distinguishing or identification number, or serial number or mark has been removed, covered, altered, changed, defaced, destroyed or obliterated, is guilty of an offense, unless, within 10 days after the motor vehicle or any part thereof shall have come into his possession, he files with the Director of the Division of Motor Vehicles in the Department of Law and Public Safety a verified statement showing: the source of his title, the proper trademark, identification or distinguishing number, or serial number or mark, if known, and if known, the manner of and reason for the mutilation, change, alteration, concealment or defacement, the length of time the motor vehicle or part has been held and the price paid therefor.
Defendants contend that the reporting requirement embodied in the statute violates their Fifth Amendment right against self-incrimination. They allege that, by reporting the destroyed or altered identification number, they will have created a link to other crimes for which defendants could, and, in fact, were, eventually charged.
Evidentually, Detective Charles Cooper, a member of the New Jersey State Police assigned to investigate auto thefts, testified that a person possessing a vehicle or parts with altered or destroyed identification numbers, must file with the Director of the Division of Motor Vehicles, a verified statement as prescribed by the statute. In addition, the vehicle or parts must be brought to the state police station at Totowa or Hammonton and the correct number ascertained.
If it is determined that the parts are stolen, then they are seized by the state police and they are returned to their original owner. The disposition of the person presenting the vehicle or parts is not entirely clear. The following interchange during cross-examination of Detective Cooper in the Landolfi trial is instructive.
Q. I believe you told us that if it later turned up things were stolen, Mr. Landolfi would have been charged with receiving stolen goods?
A. I don't believe I said that. But that's a possibility, yes, sir.
Q. Who would make the decision whether or not liability attached, criminal liability?
A. Well, are you asking if I was conducting the investigation?
Q. No, I'm asking  well, let's say you were.

*423 A. Okay. After I completed the investigation in its entirety, depending on how the facts developed, if the need was necessary, the facts of the case would be discussed with a prosecutor. And at that point there I would be guided accordingly as to the prosecutor's direction.
Q. You have any written directive to that effect from the Attorney General?
A. No, sir.
Q. So it's kind of left up in the air, isn't it; depends on the individual running the investigation. You might do it, the other officer might not?
A. That's correct.
Q. So any citizen going in there in good faith trying to help you out is gambling on whether they have got a nice officer or a not so nice officer; isn't that true?
A. No, sir.
Q. Well, I thought you said you might not and somebody else might?
A. I don't think that has anything to do whether we are nice or not. I think it's based upon the fact of the investigation because you could be a nice guy and still arrest somebody.
In response to defendants' motions, the State posits three theories for upholding the statute. First, the State suggests that the plain language of the statute does not require the disclosure of incriminatory information since the offense is completed when there is knowing possession of a vehicle with an altered identification number for an unlawful purpose. The disclosure requirement is suggested to be a voluntary provision which serves to guarantee that there will be no prosecution. Secondly, the State alleges that the statute has an implied immunity provision and, lastly, that the testimony supplied by Detective Cooper does not implicate a violation of defendants' Fifth Amendment privilege.
The Fifth Amendment privilege against self-incrimination is soundly rooted in New Jersey's common law. State v. Hartley, 103 N.J. 252 (1986). Although the Fifth Amendment protection has been made applicable to the states under Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the boundaries of New Jersey's common law privilege embodied in the rules of evidence can be interpreted more expansively. Matter of Grand Jury Proceedings of Guarino, 104 N.J. 218 (1986). The present *424 codification of the privilege in New Jersey is in Evid.R. 25 and N.J.S.A. 2A:84A-19.
In asserting this privilege, both defendants argue that, facially, the statute requires the disclosure of information which creates an evidential link to those defendants who are also charged with receiving stolen property, or for any other offense in which the possession of the vehicle or parts would draw the focus of the police or other investigatory body. Defendants contend that the statute offers no construction to alleviate this infirmity.
In addressing the constitutionality of the statute, the court is mindful that N.J.S.A. 1:1-1 requires:
In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
Further, quoting Justice Haneman in State v. Profaci, 56 N.J. 346 (1970).
Some basic guides for ascertaining the constitutionality of statutes bear repeating. It must be remembered that the presumption is that the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner. The articulation of the elements which furnish that essential intent need not appear in the statutory language. Lomarch Corn. v. Mayor of Englewood, 51 N.J. 108 (1968). The further presumption is that a statute will not be declared inoperative and unenforceable unless it is plainly in contravention of a constitutional mandate or prohibition. Daly v. Daly, 21 N.J. 599 (1956). See also Russo v. Governor of State of New Jersey, 22 N.J. 156, 170 (1956); In re Loch Arbour, 25 N.J. 258, 262 (1957); State v. Hudson County News Co., 35 N.J. 284, 294 (1961); State v. Monteleone, 36 N.J. 93, 99 294 [173 A.2d 20] (1961); State v. Monteleone, 36 N.J. 93, 99 [175 A.2d 207] (1961). Even though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation. Woodhouse v. Woodhouse, 17 N.J. 409 (1955). [56 N.J. at 349-350].
This is not to deviate from the general rule that penal statutes should be strictly construed and ambiguities should be *425 construed in favor of the defendant. State v. Davis, 175 N.J. Super. 130 (App.Div. 1980), State v. Valentin, 105 N.J. 14 (1987).
As in the case here, whenever the court is confronted with the question of a compelled disclosure that has an incriminating potential, judicial scrutiny is invariably close. California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). A question such as this must be considered with great care, for it is our belief that the privilege against self-incrimination, as well as all other fundamental constitutional protections, may only be limited for the most substantial of reasons. U.S. v. Flores, 753 F.2d 1499 (9 Cir.1985) (citing U.S. v. Carlson, 617 F.2d 518 (9 Cir.1980), cert. denied 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 468 (1980)).
In this case, the statute requires an individual who meets the prerequisites of the section to file a verified statement with the Director of the Division of Motor Vehicles in the Department of Law and Public Safety, showing:
1. the source of the title,
2. the proper trademark, identification number or serial number, if known,
3. the manner of and reason for the alteration or change,
4. the length of time the vehicle or part has been held, and
5. the price paid therefor.
The State contends that this requirement is voluntary and that the offense is completed by the possession with an unlawful purpose. The reporting aspects are to be treated as an affirmative defense to prosecution. Therefore, no Fifth Amendment question would arise since the information is not compelled.
Even if this formulation is correct, it still does not obviate the problem. Defendant can only escape prosecution by supplying the information listed in the statute. The disclosure must take place within ten days of the vehicle or parts coming into the claimant's possession. It is not at all clear if the State could prosecute a violation of this section if the ten-day grace period had not already run.
*426 The State's position places a defendant squarely between the horns of a dilemma. Does he file the report and face prosecution for other offenses or does he refuse to file and face prosecution under this section?
The disclosure of the above stated information under threat of prosecution clearly falls within the ambit of the Fifth Amendment privilege. This privilege, while not absolute, operates where the information sought to be extracted presents a realistic threat of incrimination as distinguished from a mere imaginary possibility. The threat is sufficiently realistic where the information would furnish a link in the chain of evidence needed to prosecute the claimant for a crime or if the information would supply an investigatory lead or produce evidence by focusing investigation on a witness as a result of his compelled disclosures. U.S. v. Powe, 591 F.2d 833, 845 n. 36 (D.C. Cir.1978); State v. Conquest, 152 N.J. Super. 382 (Law Div. 1977). It should be noted that the State's position varies greatly from that at trial where the reporting requirement was argued, proof offered and the jury instructed that it was an element of the offense.
If the disclosure is of a type which triggers Fifth Amendment protection, the Supreme Court has emphasized several factors which must be considered. First, is the reporting requirement directed at a highly selective group inherently suspect of criminal activities, rather than the public at large? Second, does the inquiry concern an essentially non-criminal and regulatory area or does the inquiry take place in an area permeated with criminal statutes where response to any of the questions in context might involve the claimants of the privilege in the admission of a crucial element of the crime? Finally, would compliance with the disclosure requirement create a substantial likelihood of prosecution? Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965).
*427 Clearly, the first two prongs of the Albertson test are met here. The statute and reporting requirement applies solely to the person who, for an unlawful purpose, possesses the vehicle or parts with the changed numbers; hence, a highly selective group. In addition, the reporting requirement is part and parcel of a criminal statute and not part of a regulatory inquiry. In fact, the court has been unable to find any other statute which requires the completion of a verified statement unless the vehicle or part is possessed for an unlawful purpose.
It is at the third prong of Albertson that the State makes a meaningful stand. The State, in its brief, argues that the statute has a built-in immunity clause which prohibits the use of any information supplied in the prosecution for a violation of this section or any other. While a facial reading of the statute does not impart such an interpretation, the State indicates that it lurks somewhere within the phrase "guilty of an offense, unless." The State suggests that from this language, the Legislature obviously intended that the information gleaned from the statement would not and could not be used against the informant.
A review of the Public Safety and Defense Committee statement provides little support for this construction. The statute in its present form is to provide law enforcement agencies with additional tools with which to combat auto theft. The statute was amended in 1983 to clarify that the activities prohibited by the bill would be considered criminal offenses only if done for an unlawful purpose. It is conceivable that the Legislature intended this section's reporting requirement to be a source of leads to apprehend those who actually procured the parts or vehicles but to find such a purpose in the offered language would be mere speculation on the court's part.
In addition, penal statutes must be sufficient so that ordinary people can understand what conduct is prohibited. Town Tobacconist v. Kimmelman, 94 N.J. 85 (1983). Vague laws may *428 trap the innocent by not providing fair warning. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). When more than one reasonble intepretation may be made, or where the language is ambiguous, the construction must be drawn against the State. State v. Carbone, 38 N.J. 19 (1962).
The statute requires the disclosure of potential incriminatory information. The alternative is to face prosecution for another offense. Such a choice is not permissible under the law of New Jersey. In the alternative, the State argues that even if compelled disclosure does take place, the statute should not be struck down since the State would never choose to prosecute anyone who has complied. Such a gratuitous move by the Attorney General is indeed welcome but since it is not binding, nor even authoritative, cannot be given serious consideration.
It is, therefore, the holding of this court that N.J.S.A. 2C:17-6(b) is unconstitutional as applied to these defendants. It is sufficiently ambiguous to require construing it against the State. The construction requested by the State would cure the infirmity under which the statute presently suffers but it is a construction so strained as to be an unreasonable interpretation.
The test, as pointed out by Judge Narrow, in considering a reporting requirement, is whether such reporting could reasonably constitute a link in the chain of evidence produced against a defendant. State v. Conquest, supra. Clearly, under the factual context of these two indictments, such reporting, as is required by N.J.S.A. 2C:17-6(b), could reasonably constitute a link in the chain of evidence produced against both defendants, Pontelandolfo and Landolfi, on those counts charging these defendants with receiving stolen property, contrary to N.J.S.A. 2C:20-7.
Thus, those counts of I-461-6-87 and I-462-6-87 charging violations of N.J.S.A. 2C:17-6(b) are dismissed.