244 N.J. Super. 180 (1990)
581 A.2d 1333
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1990.
Decided October 25, 1990.
*182 Before Judges GAULKIN, SHEBELL and SKILLMAN.
Dennis T. Kearney argued the cause for appellant (Pitney, Hardin, Kipp & Szuch, attorneys; Dennis T. Kearney and Martin J. Tuohy, on the brief; J. Michael Nolan, Jr., Martin J. Tuohy, and Amy J. Wolin, on the reply brief).
Robin R. Parker, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Steven E. Lessick, of counsel and on the brief).
The opinion of the court is delivered by SHEBELL, J.A.D.
Defendant, Robert Davis, appeals the denial of his application for Pretrial Intervention (PTI), the denial of his motions seeking dismissal of the charge of a violation of N.J.S.A. 2C:17-6b *183 on the grounds that the statute is unconstitutional, his jury convictions, and the denial of his several motions for a new trial.
On August 11, 1986, a State Grand Jury indicted defendant on one count of third-degree conspiracy (N.J.S.A. 2C:5-2); three counts of third-degree receiving stolen property valued in excess of $500 (N.J.S.A. 2C:20-7(a) and N.J.S.A. 2C:2-6); three counts of third-degree possession of a motor vehicle valued in excess of $500 with removed or altered identification marks (N.J.S.A. 2C:17-6(b)), and one count of fourth degree unlawful purchase of a firearm (N.J.S.A. 2C:39-10(a)).
Following his indictment defendant applied for entry into the Cape May County PTI program. On September 30, 1986, the Cape May County PTI Coordinator forwarded to the defendant a preliminary rejection of his application. The preliminary rejection notice outlined the background of defendant's case and concluded that due to "the on-going nature of the offense this case falls within the exclusionary intent of Guideline 3i(1)[,] `part of a continuing business or enterprise.'" On October 8, 1986, defendant's attorney wrote to the PTI Coordinator requesting reconsideration of the defendant's application, or, alternatively, that the Coordinator "at least table it" until the defendant received discovery from the State. Defendant's attorney urged the PTI Coordinator to consult the Attorney General's Office regarding the disposition of defendant's PTI application. On December 2, 1986, the PTI Coordinator sent a letter to defendant's attorney advising him that the Coordinator spoke with the Deputy Attorney General (DAG) in charge of defendant's case who informed the Coordinator that the Attorney General's Office decided to reject defendant.
Notwithstanding the rejection notices from the PTI Coordinator, defendant's attorney wrote to the DAG in charge of defendant's case to once again request that defendant be permitted to enter the PTI program. Defendant's attorney also suggested that defendant forfeit any interest he had in the alleged *184 stolen vehicles and compensate those parties that suffered a loss as a result of the vehicles' theft.
On June 3, 1987, the DAG wrote to the Cape May County PTI Coordinator to advise her that the Attorney General's Office reconsidered defendant's PTI application and was "now prepared to admit Mr. Davis, subject to the conditions set forth herein, into the program." Specifically, the State enumerated the following conditions for admission:
The State's consent to admission of Mr. Davis into Pre-Trial Intervention is conditioned upon his forfeiting any claim he might have to a 1985 Chevrolet rollback towtruck, identified as V-48 in the police reports and his indemnifying the appropriate parties for those items of stolen property found on a 1976 Chevrolet towtruck, V-49, and a 1981 Chevrolet towtruck, V-50. He must also forfeit any interest he might have in a .22 caliber Magnum Ruger revolver found during the execution of a search warrant at the defendant's place of business.
With regard to the earlier reasons stated by the Coordinator for rejection, the DAG stated that "the evidence does not support the inference that Mr. Davis was part of organized criminal activity or a continuing criminal business or enterprise of which he can demonstrably be said to have had knowledge." On June 18, 1987, the same DAG wrote to the Cape May PTI Coordinator, enclosed a copy of a Camden County indictment, and advised her that it was his intention "that P.T.I. for Mr. Davis include this indictment as well." The Camden County indictment involved an apparently unrelated offense.
On June 26, 1987, the county PTI Coordinator signed an "Eligibility Report-Rule 3:28" which stated:
that in accordance with the policy of the court, the defendant is eligible for participation and it is recommended that all further proceedings be adjourned for a period of six months and that the defendant be continued in the Pre-Trial Intervention program subject to the conditions set forth in the Participation Agreement.
Subsequently, defendant, his attorney, and PTI Coordinator signed a notice of first postponement of the proceedings.[1] *185 Defendant signed the participation agreement referred to in the Eligibility Report. It included the following special conditions:
5. To report as directed to Mr. John Schofield at the Cape May County Probation department  PHONE: (609) 465-1121 for the purpose of counselling and case supervision.
6. Defendant agrees to forfeit any claim to the 1985 Chevrolet rollback tow truck.
7. Defendant agrees to indemnify the appropriate parties for the stolen engines found in his trucks.
Three and a half months later, on October 14, 1987, the Chief of the Litigation Section of the Criminal Division of the Attorney General's Office wrote to the Cape May County Criminal Case Management Office to inform it that the Attorney General's Office was reversing its position regarding defendant's PTI application. In pertinent part the letter stated:
Since the departure of Deputy Attorney General Leo Cox, these matters have been transferred to Deputy Attorney General Raymond S. Gurak for review and completion. Recently, D.A.G. Gurak has informed me that Mr. Davis' receiving stolen property offenses are significant offenses and thus his entry into P.T.I. is unwarranted. I have discussed these cases with D.A.G. Gurak and have concluded that the State should oppose P.T.I. for Mr. Davis and proceed with the prosecution of his indictments. Accordingly, please restore these cases to the active calendar as soon as possible.
Following the State's change in position, on December 15, 1987, defendant moved before the Law Division to compel his admission in the PTI program.
The Law Division conducted a hearing on December 15, 1987. After oral arguments, the court concluded that defendant's application had been rejected as of December 1986 and, therefore, denied defendant's motion to compel admission into PTI. The court reasoned that all negotiations which occurred between defendant's attorney, the PTI Coordinator, and the DAG formerly in-charge of defendant's case, after the initial December 1986 rejection, were out of time and beyond their authority. The judge stated:
I am not able to compel admission of the defendant over the Attorney General's objection based upon a couple of factors. First, as I've indicated, I think the application is substantially out of time. Second, even if under the authorize [sic] authority of the rules, which I have, I relax the time in the interest of *186 justice, I do not perceive on the facts that I have before me the requisite showing of patent and gross abuse of the discretion in a substantive fashion.
On June 1, 1988, the Cape May County Grand Jury issued a superseding indictment against the defendant. The new indictment charged defendant with three counts of third-degree receiving stolen property in violation of N.J.S.A. 2C:20-7 and one count of third-degree possession of a motor vehicle or a part thereof valued in excess of $500 with removed or altered identification number or mark in violation of N.J.S.A. 2C:17-6(b). It further charged, as an element of N.J.S.A. 2C:17-6b, that defendant failed to file a verified report within ten days of receipt of the vehicle informing the Director of the Division of Motor Vehicles of altered or missing identity numbers or marks.
On July 20, 1988, the DAG who had taken over control of defendant's case sent a letter to the Cape May County Criminal Case Management Office advising that although the pretrial judge "indicated that defendant would be allowed to reapply for PTI in the interest of fairness, given his superseding indictment.... [T]his substitute indictment does not change the posture of the case at all...." The letter also explained the State's opposition to any renewed PTI application by defendant. The DAG forwarded a copy of this letter to defendant's attorney.
On August 3, 1988, the PTI Coordinator, over the objections of the State, recommended the approval of defendant's renewed PTI application citing "the defendant's amenability and lack of any prior criminal record...." In support of this recommendation, the Coordinator stated:
I feel he is a well motivated and qualified candidate for admittance into the Cape May County Pre-Trial Intervention program.
Mr. Davis is a stable, well regarded individual and a successful businessman. He has suffered tremendous emotional and financial burdens throughout the long course of these legal procedures. It is felt that the defendant would benefit more from diversion rather than prosecution.
*187 In addition, on September 13, 1988, the PTI Coordinator apparently forwarded an Eligibility Report to the Division of Criminal Justice stating:
It is the opinion of the Coordinator that in accordance with the policy of the court, the defendant is eligible for participation and it is recommended that all further proceedings be adjourned for a period of six months and that the defendant be continued in the Pre-Trial Intervention program subject to the conditions set forth in the Participation Agreement.
Although we do not find documentation in the record, oral argument reflected that defendant's PTI application on the superseding indictment was ultimately denied just before trial commenced and no appeal was taken.
Defendant's jury trial continued for eleven days after beginning on September 13, 1988, the same day that the PTI Coordinator issued the favorable Eligibility Report. On September 29, 1988, the jury returned a guilty verdict on counts one and two, possessing a motor vehicle or part thereof valued over $500 with an altered or removed identification number and receiving stolen property valued in excess of $500. Defendant was acquitted on the two remaining counts of receiving stolen property.
On December 16, 1988, the trial court sentenced defendant to three-years' probation, a $5,000 fine, and 200 hours community service for third-degree receiving stolen property. For possessing a motor vehicle valued in excess of $500 with altered or missing identification numbers, defendant received a concurrent three-year probationary term.
The pertinent facts adduced at trial establish that on April 8, 1986, the State Police conducted a search of defendant's business, Bob's Auto Body Shop in North Wildwood, pursuant to a warrant that authorized the police to search for stolen motor vehicles or parts. Soon after the police arrived at the body shop, the defendant appeared. The police advised defendant why they were there and asked to examine defendant's rollback truck.
*188 After searching the rollback truck to find its public vehicle identification numbers, confidential vehicle identification numbers, transmission serial numbers, and federal decal sticker, the police discovered that the truck's federal decal sticker had been removed and that the engine serial numbers were ground-off. A weld was placed over the area where the serial numbers were located. The confidential vehicle identification number was located on top of the right frame rail of the truck's cab. This number was difficult to locate because of a heavy undercoating on the frame. After identifying this number, the police reported it to the National Auto Theft Bureau. The inquiry revealed that the vehicle was stolen.
The rollback truck's cab displayed a public vehicle identification number for a 1980 truck. Defendant presented the police with a certificate of title for the truck that indicated it was a 1980 Chevrolet. The confidential numbers, however, disclosed that the vehicle was in fact a 1985 Chevrolet. This led the police to believe the 1980 cab had been placed on the frame of a 1985 truck. After their search, the police seized the rollback truck, a 1976 tow truck, and a 1981 tow truck.
The confidential numbers found on the frame of the rollback truck matched those of a rollback truck stolen from Barlow Chevrolet in Delran, New Jersey. The owner of Barlow Chevrolet estimated the stolen truck's value as $25,000 and the rollback portion of the truck alone was valued at approximately $11,000.
Defendant asserted that he purchased a 1980 stake body truck that was later converted into the rollback truck. According to defendant, he arranged with the owners of B & D Salvage Company in Philadelphia for the conversion of the stake body truck into a rollback truck. Defendant claimed that B & D picked up his 1980 stake body truck; three weeks later it was returned in the converted form of a rollback truck. Allegedly, the conversion of the truck, along with the installation of a motor, cost the defendant $3,500. The owners of B & D *189 Salvage Company were under investigation for dealing in stolen vehicles at the time of defendant's arrest. According to an expert witness for the State, the rollback truck was in fact a 1985 Chevrolet with the exception of the placement of the 1980 cab on the frame of the vehicle.
In his appeal defendant urges:
POINT I: THE DENIAL OF MR. DAVIS' ADMISSION TO PRETRIAL INTERVENTION IS FUNDAMENTALLY UNFAIR AND CONSTITUTES A PATENT AND GROSS ABUSE OF DISCRETION.
POINT II: N.J.S.A. 2C:17-6(b) IMPERMISSIBLY COMPELS DISCLOSURE OF POTENTIALLY INCRIMINATING INFORMATION UNDER THREAT OF PROSECUTION AND, THEREFORE, IS UNCONSTITUTIONAL AS A VIOLATION OF MR. DAVIS' FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION.
POINT III: THE TRIAL COURT REPEATEDLY ERRED IN PROHIBITING MR. DAVIS' COUNSEL FROM EXPLORING AVENUES OF POSSIBLE BIAS, PREJUDICE, INTEREST OR ULTERIOR MOTIVE ON THE PART OF THE STATE'S WITNESSES.
POINT IV: THE TRIAL COURT IMPROPERLY ADMITTED INTO EVIDENCE A DOCUMENT INDICATING THE VALUE OF THE STOLEN VEHICLE.
POINT V: THE TRIAL COURT'S ALLOWANCE OF THE HYPOTHETICAL QUESTION POSED BY THE STATE WITH RESPECT TO MR. DAVIS' INTENT CONSTITUTES REVERSIBLE ERROR SINCE IT INCLUDED AN IMPROPER ASSUMPTION.
POINT VI: THE TRIAL COURT ERRED IN INSTRUCTING THE JURY OF THE COMMON LAW INFERENCE ARISING OUT OF THE POSSESSION OF RECENTLY STOLEN GOODS.
POINT VII: THE TRIAL COURT IMPROPERLY DENIED MR. DAVIS' MOTION FOR A NEW TRIAL ON THE BASIS OF PREJUDICIAL EX PARTE COMMUNICATIONS BETWEEN THE TRIAL JUDGE AND A JUROR.

I.
Defendant contends that the State improperly withdrew its consent to permit him to enter the Cape May County PTI program. He asserts that the State's change of position represents a patent and gross abuse of discretion and is fundamentally unfair.
The State argues that it had a sufficient basis for denying defendant's entry into the program. It further argues "that *190 defendant is procedurally barred from challenging the rejection of his application for pretrial intervention at this juncture." R. 3:28, Guideline 6, establishes procedures for PTI applications and appeals. See also N.J.S.A. 2C:43-12(f). In cases of an adverse decision by a prosecutor or PTI Coordinator "[a]n appeal by defendant to the trial court shall be brought within seven days after the rejection notice and should be determined either before or at the pretrial conference." R. 3:28, Guideline 6.
After the Cape May County Coordinator rejected defendant from participation in PTI on December 2, 1986, his attorney negotiated with the DAG handling defendant's case for reconsideration of the decision rejecting defendant from PTI. These negotiations led the State to permit defendant into the PTI program. Defendant's PTI diversion was subsequently revoked, however, when a new DAG took charge of defendant's case. Defendant unsuccessfully moved to compel the State to allow him into PTI. Again, after the superseding indictment, defendant applied for PTI. Although the PTI Coordinator accepted his application, the State rejected him from the program. Defendant did not appeal this decision as trial was imminent.
Rather than appealing defendant's initial rejection to the trial court, defense counsel negotiated a reconsideration with the Attorney General's Office. Defendant thereafter received notice of the acceptance of his application and the stay of proceedings subject to conditions he agreed to accept. The State at oral argument conceded that, before the State changed its position, the defendant, with the aid of the State and through the Office of the Attorney General, made every effort to satisfy those conditions, including tendering payment of reimbursement to those who suffered loss by the thefts.
In his denial of defendant's motion, the Law Division judge concluded that defendant's application was substantially out of time. In these circumstances, however, we question *191 whether it is the defendant or the State that should be procedurally barred. The State did not advise the defendant that it could not negotiate with defendant or that it was without authority to consent to his admission. Further, the State accepted the benefit of defendant's performing certain of the conditions of his admission to PTI without raising procedural questions. We do not accept the State's position that defendant should be denied relief because of his failure to appeal his initial rejection. The Guidelines for Operation of Pretrial Intervention in New Jersey do not prohibit informal applications to the prosecutor for reconsideration. The guidelines are intended to promote substantial justice for deserving defendants, not to thwart the administration of justice. We, therefore, proceed to review defendant's assertion that the denial of his admission to PTI is unfair and constitutes a patent and gross abuse of discretion.
Defendant urges that as a matter of fairness he should be admitted into PTI. Defendant argues that the State led him to believe that he would be participating in the program and that he relied on the State's representations to his detriment. Defendant refers this court to its opinion in State v. Marrero, 155 N.J. Super. 567, 383 A.2d 131 (App.Div. 1978), in which we ordered the defendant's placement into PTI as a matter of fundamental fairness and substantial justice. Id. at 570, 383 A.2d 131. There the defendant was convicted of a firearms offense while his PTI application was pending. Id. at 569, 383 A.2d 131. Apparently, defendant's counsel did not inform the judge who presided over the criminal trial of the pending PTI application. Id. Subsequently, the defendant received a PTI recommendation and the prosecutor's office concurred. Id. As a result, the trial judge designated to handle PTI matters approved the application. Id. at 570, 383 A.2d 131.
When defendant Marrero subsequently appeared for sentencing on the charge contained in his PTI application, the trial judge handling the criminal matter stated

*192 that he spoke with the PTI judge, who did not know about the conviction when he granted the defendant's application. In light of this new information the PTI judge felt that the defendant's application was improvidently granted and rescinded his authorization. The trial judge then imposed sentence.... [Id.]
During the criminal proceeding, Marrero's trial counsel apparently did not know of defendant's PTI application, even though he worked in the same office with another public defender who represented defendant regarding his PTI application. Id. at 569, 383 A.2d 131. We concluded in Marrero that when fundamental fairness and substantial justice required, a defendant's conviction and sentence could be vacated and defendant could be admitted to the PTI program. Id. at 570, 383 A.2d 131.
In reviewing PTI applications, courts generally defer to the judgment of the prosecutor. See State v. Dalglish, 86 N.J. 503, 509, 432 A.2d 74 (1981). "In reviewing a prosecutor's denial of consent, a court's scrutiny normally is limited to the reasons given by the prosecutor for his action. Absent evidence to the contrary, it is presumed that the prosecutor considered all relevant factors before rendering a decision." Id. (citation omitted). Thus, a prosecutor has broad discretion regarding PTI applications. See State v. Leonardis, 73 N.J. 360, 381, 375 A.2d 607 (1977). In State v. Bender, 80 N.J. 84, 402 A.2d 217 (1979), the Supreme Court stated:
Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention. [Id. at 93, 402 A.2d 217 (citations omitted)].
Defendant's initial PTI rejection by the PTI Coordinator and subsequent rejection by the succeeding DAG were allegedly based on his involvement in a continuing criminal enterprise. Under R. 3:28, Guidelines 3(i)(2), defendants charged with crimes involving "part of a continuing criminal business or enterprise ... should generally be rejected." The DAG's letter of June 3, 1987, however, expressly recognized defendant's lack of prior involvement with the criminal justice system and *193 reached the conclusion that "the evidence does not support the inference that [defendant] was part of organized criminal activity or a continuing business or enterprise." This letter, together with the PTI Coordinator's August 3, 1988 recommendation of defendant for the program, fully dispelled the State's original basis for rejection.
We are satisfied from the documentation presented to us that defendant had a legitimate expectation of admission into PTI after the DAG in charge of his case consented and gave valid reasons for defendant's admission. In reliance on the State's announced decision to admit him to PTI, defendant undertook, in apparent good faith, to fulfill the conditions negotiated by the DAG and defense counsel. The State at oral argument agreed that it was only a change in the view of the new DAG assigned to defendant's case, rather than new factors, that prevented defendant's admission to PTI and the eventual dismissal of his indictments. It is clear that defendant's trial moved forward only because of that different attitude of the DAG who took over defendant's case after the previous DAG became unavailable.
The State asserts that the "defendant has advanced no compelling reasons to overcome the prosecutor's considered decision." On the contrary, defendant's presentation to this court of the PTI Coordinator's Eligibility Reports and recommendations, together with those of the DAG who agreed to defendant's admission to PTI, fully satisfy his burden in this regard. We believe that a defendant's reasonable expectations, generated by negotiations with the State during plea bargaining or pretrial proceedings, require meticulous adherence. See State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988); State v. Kovack, 91 N.J. 476, 483, 453 A.2d 521 (1982); State v. Marzolf, 79 N.J. 167, 183, 398 A.2d 849 (1979); State v. Salentre, 242 N.J. Super. 108, 111, 576 A.2d 36 (App.Div. 1990); State v. Brockington, 140 N.J. Super. 422, 427, 356 A.2d 430 (App. Div. 1976). Sound principles of the administration of justice *194 require that, absent exceptional circumstances, the word of the State through its prosecutors be worthy of trust and reliance and not subject to change caused by reassignment of counsel.
Defendant clearly suffered prejudice as a result of the State's change in position for, as noted by the PTI Coordinator in his August 3, 1988 recommendation, defendant "has suffered tremendous emotional and financial burdens throughout the long course of these legal procedures." We cannot value the well-being of a defendant in these circumstances so little as to conclude that the State's unwarranted change in position was without consequence. We are unable to countenance the State's change in position in this case and therefore must order that his conviction and sentence be vacated subject to reinstatement in the event defendant fails to successfully complete PTI. The matter is remanded to the Law Division for entry of an order, with appropriate conditions, admitting defendant to PTI in Cape May County.

II.
Defendant attacks the constitutional validity of N.J.S.A. 2C:17-6(b), asserting that under the statute he is compelled to disclose incriminating evidence against himself or face prosecution. Defendant claims the statute therefore places him in a dilemma that violates his fifth amendment right against self-incrimination. Defendant also claims N.J.S.A. 2C:17-6(b) is vague. Thus, defendant argues that the statute should be ruled unconstitutional. Although we have set aside defendant's conviction, we consider it necessary to decide the issue for, if defendant's contentions are correct and the statute is invalid, he should not be placed in jeopardy by its application even through admission to a PTI program.
N.J.S.A. 2C:17-6(b) provides the following:
A person who for an unlawful purpose knowingly possesses any motor vehicle, or any of the parts thereof, from or on which any trademark, distinguishing or identification number, or serial number or mark has been removed, covered, altered, changed, defaced, destroyed or obliterated, is guilty of an *195 offense, unless, within 10 days after the motor vehicle or any part thereof shall have come into his possession, he files with the Director of the Division of Motor Vehicles in the Department of Law and Public Safety a verified statement showing: the source of his title, the proper trademark, identification or distinguishing number, or serial number or mark, if known, and if known, the manner of and reason for the mutilation, change, alteration, concealment or defacement, the length of time the motor vehicle or part has been held and the price paid therefor. [Emphasis supplied].
The statute has at least three elements: (1) knowing possession of (2) a motor vehicle with altered or missing identification numbers or marks (3) for an unlawful purpose. Defendant maintains that failure to report the unlawful possession of a motor vehicle with altered or missing numbers or marks within ten days of receiving the vehicle is also an element of the crime. The State at oral argument agreed with this position.
As to his claim of unconstitutionality, defendant relies on the decision of the Law Division in State v. Pontelandolfo, 227 N.J. Super. 419, 547 A.2d 738 (Law Div. 1988), wherein the court ruled that N.J.S.A. 2C:17-6(b) was in violation of the right against self-incrimination because of its reporting requirement. Id. at 428, 547 A.2d 738. Defendant also relies on the Supreme Court's 1924 decision in State v. Lee, 100 N.J.L. 201, 126 A. 420 (Sup.Ct. 1924), that held that the disclosure portion of the predecessor statute is an element of the offense. In further support of his position, defendant points to the State's amendment of the indictment against him to allege failure to file a report under the statute.
In its written opinion the trial court in this case determined that the statute did not penalize a person for failure to report. The trial court essentially reasoned that the reporting aspect of the statute was not an element but rather an affirmative defense. It disagreed with Pontelandolfo, viewing that decision as shifting the focus of the crime from one of possession to one of non-reporting. The trial court found that the statute was clear as to the conduct it proscribed, and thus, was not unconstitutionally vague. The court upheld the constitutionality of the statute. We agree.
*196 The statute considered by the former Supreme Court in State v. Lee, 100 N.J.L. 201, 126 A. 420 (Sup.Ct. 1924), unlike our present statute, did not require that the possession be for an unlawful purpose. See N.J.S.A. 2C:17-6(b), Senate Law, Public Safety and Defense Committee Statement, Assembly, No. 1418  L. 1983, c. 351. Under the previous statute, any knowing possession of an altered motor vehicle was illegal unless the possessor filed the required verified statement. L. 1919, c. 114, § 3. Further, the decision in Lee was made prior to the enactment of the Criminal Code, which specifically defines "element" and "affirmative defenses." N.J.S.A. 2C:1-1. Thus, the Lee court's interpretation of the statute and its definition of "element" were based on the common law. Here, this court is bound to follow the definitions provided in the Code. N.J.S.A. 2C:1-1.
The term "element" is specifically defined by the Criminal Code as:
(1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as
(a) Is included in the description of the forbidden conduct in the definition of the offense;
(b) Establishes the required kind of culpability;
(c) Negatives an excuse or justification for such conduct;
(d) Negatives a defense under the statute of limitations; or
(e) Establishes jurisdiction or venue.... [N.J.S.A. 2C:1-14(h)].
See State v. Ingram, 98 N.J. 489, 493, 488 A.2d 545 (1985).
N.J.S.A. 2C:1-13 provides in part as follows:
c. A defense is affirmative, ... when:
(1) It arises under a section of the code which so provides; or
(2) It relates to an offense defined by a statute other than the code and such statute so provides; or
d. When the application of the code depends upon the finding of a fact which is not an element of an offense, unless the code otherwise provides:
(1) The burden of proving the fact is on the prosecution or defendant, depending on whose interest or contention will be furthered if the finding should be made; and
(2) The fact must be proved to the satisfaction of the court or jury, as the case may be. [N.J.S.A. 2C:1-13c, d].
*197 It is fundamental that penal statutes must be strictly construed. State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987). All ambiguities are construed against the state. Id. at 18, 519 A.2d 322. However, "[e]ven though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of [a] Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation." State v. Profaci, 56 N.J. 346, 350, 266 A.2d 579 (1970).
Here, N.J.S.A. 2C:17-6(b) states that a person is guilty of a crime if "for an unlawful purpose [he or she] knowingly possesses any motor vehicle, or any parts thereof ..." from which identifying marks have been removed, "unless, within 10 days after the motor vehicle or any part thereof shall have come into his possession ..." he reports it to the Director of the Division of Motor Vehicles. The reporting provision is not "included in the description of the forbidden conduct in the definition of the offense," nor does it "[n]egative[] an excuse or justification" for particular conduct. N.J.S.A. 2C:1-14(h). Consequently, the reporting provision is not an element of the offense. Rather, the reporting provision constitutes an affirmative defense because "the application of the code [specifically N.J.S.A. 2C:17-6(b)] depends upon the finding of a fact which is not an element of an offense...." See N.J.S.A. 2C:1-13(d).
In Pontelandolfo, the Law Division, in coming to an opposite conclusion from the one of the trial court here, found the following:
The statute requires the disclosure of potential incriminatory information. The alternative is to face prosecution for another offense. Such a choice is not permissible under the law of New Jersey. In the alternative, the State argues that even if compelled disclosure does take place, the statute should not be struck down since the State would never choose to prosecute anyone who has complied. Such a gratuitous move by the Attorney General is indeed welcome but since it is not binding, nor even authoritative, cannot be given serious consideration.
It is, therefore, the holding of this court that N.J.S.A. 2C:17-6(b) is unconstitutional as applied to these defendants. It is sufficiently ambiguous to require construing it against the State. The construction requested by the State would *198 cure the infirmity under which the statute presently suffers but it is a construction so strained as to be an unreasonable interpretation. [227 N.J. Super. at 428, 547 A.2d 738].
The judge in Pontelandolfo utilized the United States Supreme Court's decision in Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), to reach its conclusion that N.J.S.A. 2C:17-6(b) violated defendant's right against self-incrimination. Pontelandolfo, 227 N.J. Super. at 426-27, 547 A.2d 738. He noted the basic rule that "whenever the court is confronted with the question of compelled disclosure that has an incriminating potential, judicial scrutiny is invariably close." Id. at 425, 547 A.2d 738 (citing California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971)).
In applying the decision in Albertson, the judge in Pontelandolfo considered three factors to be essential for determining whether a defendant's right against self-incrimination is violated. Id. at 426, 91 S.Ct. at 1537. The court set forth these factors:
First, is the reporting requirement directed at a highly selective group inherently suspect of criminal activities, rather than the public at large? Second, does the inquiry concern an essentially non-criminal and regulatory area or does the inquiry take place in an area permeated with criminal statutes where response to any of the questions in context might involve the claimants of the privilege in the admission of a crucial element of the crime? Finally, would compliance with the disclosure requirement create a substantial likelihood of prosecution? [Id.].
Finding each of the requirements to be met, the Pontelandolfo court held that the statute is invalid. Id. at 427-28, 91 S.Ct. at 1537-38.
We find N.J.S.A. 2C:17-6(b) to be distinguishable from the situation presented in Albertson. Unlike the statute in Albertson, and similar cases, we hold that N.J.S.A. 2C:17-6(b) does not make non-disclosure of incriminating evidence a crime. Compare Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (law requiring importers, manufacturers and dealers of illegal weapons to register with the U.S. Treasury); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 *199 L.Ed.2d 889 (1968) (statutes requiring illegal bookmakers to register and pay taxes on their profits). The reporting aspect of N.J.S.A. 2C:17-6(b) is directed towards the general public rather than a highly selective group inherently suspect of criminal activities. Compare Albertson, 382 U.S. at 70, 86 S.Ct. at 194, 15 L.Ed.2d at 165; Marchetti, 390 U.S. at 39, 88 S.Ct. at 697, 19 L.Ed.2d at 889; Haynes, 390 U.S. at 85, 88 S.Ct. at 722, 19 L.Ed.2d at 923. Further, although the reporting requirement of N.J.S.A. 2C:17-6(b) is part of a criminal statute, it does not create a substantial likelihood of prosecution; rather, it affords protection in the form of an affirmative defense for those who might be prosecuted had they not availed themselves of the statutory opportunity to file a report. See Albertson, 382 U.S. at 79, 86 S.Ct. at 199, 15 L.Ed.2d at 172. We find no violation of a defendant's right against self-incrimination under N.J.S.A. 2C:17-6(b).
Defendant also asserts that the statute is vague. In State v. Cameron, 100 N.J. 586, 498 A.2d 1217 (1985), our Supreme Court stated, "[t]o avoid the pitfall of vagueness, the terms of a ... [statute] must enable a person of `common intelligence, in light of ordinary experience' to understand whether contemplated conduct is lawful." Id. at 591, 498 A.2d 1217 (quoting State v. Lashinsky, 81 N.J. 1, 18, 404 A.2d 1121 (1979)). As the Court noted in Cameron, statutory clarity is a matter of due process and is rooted in notions of fair play. Id. N.J.S.A. 2C:17-6(b) is sufficiently clear in its proscriptions. A person of ordinary intelligence and experience is clearly advised that he or she may not possess a motor vehicle or parts with altered or missing identification numbers for an unlawful purpose and that protection for a possessor not having an unlawful purpose may be available by reporting the circumstances of possession to the Director of Motor Vehicles within 10 days of receipt. Therefore, N.J.S.A. 2C:17-6(b) is not vague.
We need not consider the remaining issues raised on appeal by defendant. Those issues pertain exclusively to alleged trial *200 errors which defendant claims resulted in his conviction. However, those convictions no longer stand under our decision.
Defendant's convictions and sentences are vacated. The matter is remanded to the Law Division for entry of an order admitting defendant to the PTI program of Cape May County.
NOTES
[1] The copy provided to this court does not contain a judge's signature or the consent of the prosecutor. See R. 3:28(b).