607 A.2d 191

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MILTON OCTAVIUS PATTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1992—Decided May 19, 1992.

_____

[3]We noted in footnote 1 and reiterate here that any subsequent timely application to a bankruptcy court can result in an order superseding our determination.

Before Judges GAULKIN, BRODY and LANDAU.

*William R. Holzapfel* argued the cause for appellant (*LeBoeuf, Lamb, Leiby & MacRae,* attorneys; *William R. Holzapfel, Daniel J. McCarthy, Ellen B. Silverman* and *Elizabeth J. Gorman,* on the brief).

*Barbara A. Rosenkrans,* Assistant Prosecutor, argued the cause for respondent (*James F. Mulvihill,* Acting Essex County Prosecutor, attorney).

*Robert J. Del Tufo,* Attorney General, submitted a brief *amicus curiae* (*Ronald Susswein,* Assistant Attorney General, on the brief).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

We hold here that defendant's assertion of the privilege against self-incrimination bars his disorderly persons conviction under *N.J.S.A.* 2C:35–10c:

Any person who knowingly obtains or possesses a controlled dangerous substance or controlled substance analog in violation of [*N.J.S.A.* 2C:35–10a, prohibiting possession of any controlled dangerous substance without a prescription] and who fails to voluntarily deliver the substance to the nearest law enforcement officer is guilty of a disorderly persons offense. Nothing in this subsection shall be construed to preclude a prosecution or conviction for any other offense defined in this title or any other statute.

## I

Defendant was arrested by inspectors of the Alcoholic Beverage Control Enforcement Bureau in a backroom of a Newark tavern, where he was seen removing something from his pocket which he dropped on the floor. One of the inspectors retrieved the object, which turned out to be a folded $5 bill containing a white powdery substance, stipulated at trial to be .86 grams of cocaine. Defendant was indicted for third-degree possession of cocaine (*N.J.S.A.* 2C:35–10a(1)), but the State later downgraded the charge to the *N.J.S.A.* 2C:35–10c disorderly persons offense.

Following a bench trial before a Law Division judge, defendant was found guilty and sentenced to a one-year suspended term. However, on defendant's motion, the judge arrested the judgment (*R.* 3:21–9), concluding that *N.J.S.A.* 2C:35–10c unconstitutionally infringed on the privilege against self-incrimination. The State appealed to the Law Division, where a second Law Division judge reinstated the conviction, finding that the statute is constitutional if read to provide for "use and fruits" immunity. Defendant appeals from the judgment thereupon entered.

## II

We first reject defendant's argument that the State's appeal to the Law Division should have been dismissed because this court was the correct appellate venue. In the first hearing, the Law Division judge was sitting as a municipal court judge. *Cf. State v. DeLuca*, 108 *N.J.* 98, 110–111, 527 *A.*2d 1355 *cert. denied*, 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987);

*State v. Natoli,* 237 *N.J.Super.* 52, 566 *A.*2d 1167 (App.Div. 1989). The State's appeal from the post-conviction order was properly to the Law Division. *R.* 3:23–1. Moreover, if the appeal were misdirected, the remedy would have been to transfer the appeal from the Law Division to the Appellate Division. *R.* 1:13–4. By whatever route, the issues would be before us.

### III

■ Defendant's central contention is that *N.J.S.A.* 2C:35–10c impermissibly "compels individuals to give evidence or 'testimony' to the State that would undoubtedly lead to prosecution for other and substantially more serious offenses."

The governing principles are well-known. The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." *See also N.J.S.A.* 2A:84A–19 (*Evid. R.* 25). That privilege protects an individual from being compelled to "provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California,* 384 *U.S.* 757, 761, 86 *S.Ct.* 1826, 1830, 16 *L.Ed.*2d 908, 914 (1966). "The Fifth Amendment prohibits the government from forcing persons to disclose information that would tend to incriminate them in future proceedings." *In re Martin,* 90 *N.J.* 295, 331, 447 *A.*2d 1290 (1982). Where, as here, a statute requires persons to report certain activities, the criteria determining whether the statute violates the privilege against self-incrimination are these:

First, is the reporting requirement directed at a highly selective group inherently suspect of criminal activities, rather than the public at large? Second, does the inquiry concern an essentially non-criminal and regulatory area or does the inquiry take place in an area permeated with criminal statutes where response to any of the questions in context might involve the claimants of the privilege in the admission of a crucial element of the crime? Finally, would compliance with the disclosure requirement create a substantial likelihood of prosecution?

*State v. Davis,* 244 *N.J.Super.* 180, 198, 581 *A.*2d 1333 (App. Div.1990) (quoting *State v. Pontelandolfo,* 227 *N.J.Super.* 419, 426, 547 *A.*2d 738 (Law Div.1988).

Defendant argues that (1) *N.J.S.A.* 2C:35–10c is aimed at a highly selective group, those who "knowingly" possess contraband drugs; (2) the reporting requirement is solely in aid of the criminal statutory scheme; and (3) there is a substantial likelihood "that any individual complying with this statute will be prosecuted under the possession sections or other sections of the drug law." The State, and the Attorney General as *amicus curiae*, dispute only the "substantial likelihood of prosecution." They urge that the statute does not expose anyone to prosecution, but rather provides "an opportunity to extinguish further criminal liability with respect to the acquisition and simple possession of the controlled substance involved." That contention was rejected in both of the lower court proceedings and we reject it as well.

First, it is not clear that compliance with *N.J.S.A.* 2C:35–10c "extinguishes" any criminal liability at all. The statute requires any person "who knowingly obtains or possesses a controlled dangerous substance ... in violation of [*N.J.S.A.* 2C:35–10a] ... to voluntarily deliver the substance to the nearest law enforcement officer," but does not "preclude a prosecution or conviction *for any other offense* defined in this title or any other statute [emphasis added]." Although the State and the Attorney General apparently read that language to allow prosecution for any offense other than that defined in *N.J.S.A.* 2C:35–10a, it is also possible to read it as allowing a prosecution or conviction for any offense other than that defined in *N.J.S.A.* 2C:35–10c.[1]

Second, even if compliance with *N.J.S.A.* 2C:35–10c precludes prosecution under *N.J.S.A.* 2C:35–10a, it does not preclude prosecution for any other offense. The information disclosed in compliance with *N.J.S.A.* 2C:35–10c could readily support a variety of far more serious drug charges, including distribution

---

[1]There is no legislative history explaining the statutory language. *See Cannel, New Jersey Criminal Code Annotated,* comments 1 & 5 on *N.J.S.A.* 2C:35–10 (1992).

(*N.J.S.A.* 2C:35–5a(1)), possession with intent to distribute (*id.*), distribution or possession with intent to distribute within 1,000 feet of school property (*N.J.S.A.* 2C:35–7), conspiracy to distribute or possess with intent to distribute (*N.J.S.A.* 2C:5–2), and even acting as a leader of a narcotics trafficking network (*N.J.S.A.* 2C:35–3). *N.J.S.A.* 2C:35–10c does not "extinguish" such criminal liabilities, but specifically preserves them. Given the inferences that can arise according to the amount and form of drugs possessed and the circumstances of their possession, the hazards of incrimination and prosecution for those other offenses must be regarded as real and substantial. *Marchetti v. United States,* 390 *U.S.* 39, 48, 88 *S.Ct.* 697, 702, 19 *L.Ed.*2d 889, 897–898 (1968). *See also Grosso v. United States,* 390 *U.S.* 62, 67, 88 *S.Ct.* 709, 713, 19 *L.Ed.*2d 906, 911 (1968) (where statutorily required wagering information "would readily incriminate [defendant], and which he may reasonably expect would be provided to prosecuting authorities," the "hazards of incrimination can only be characterized as 'real and appreciable' "); *Haynes v. United States,* 390 *U.S.* 85, 97, 88 *S.Ct.* 722, 730, 19 *L.Ed.*2d 923, 932 (1968) (where prospective firearms registrant "realistically can expect that registration will substantially increase the likelihood of his prosecution … [and] can reasonably fear that the possession established by his registration will facilitate his prosecution[,] … it can scarcely be said that the risks of criminal prosecution … are 'remote possibilities out of the ordinary course of law' ").

The State's reliance on *State v. Davis,* 244 *N.J.Super.* 180, 581 *A.*2d 1333 (App.Div.1990), is misplaced. There we upheld *N.J.S.A.* 2C:17–6b against a challenge that it violated the privilege against self-incrimination. That statute criminalizes the knowing possession, for an unlawful purpose, of a motor vehicle whose identification marks or numbers have been removed or defaced,

<blockquote>unless, within 10 days after the motor vehicle or any part thereof shall have come into his possession, he files with the Director of the Division of Motor</blockquote>

Vehicles in the Department of Law and Public Safety a verified statement showing: the source of his title, [etc.]

We held that the reporting provision "is not an element of the offense," but rather "constitutes an affirmative defense." *Davis*, 244 *N.J.Super.* at 197, 581 *A.*2d 1333. The statute thus "does not make nondisclosure of incriminating evidence a crime." *Id.* at 198, 581 *A.*2d 1333. Nor does it "create a substantial likelihood of prosecution; rather, it affords protection in the form of an affirmative defense for those who might be prosecuted had they not availed themselves of the statutory opportunity to file a report." *Id.* at 199, 581 *A.*2d 1333. Moreover, in *Davis* there was no suggestion that compliance with the statute could provide information to support prosecution under any other law. In short, the statute in *Davis* is entirely unlike that involved here; the *Davis* holding does not conflict in any way with our holding that compliance with *N.J.S.A.* 2C:35–10c creates real and appreciable hazards of self-incrimination and prosecution.

## IV

■ On defendant's Law Division appeal, the judge acknowledged that *N.J.S.A.* 2C:35–10c "clearly compels a person to furnish incriminating evidence in violation of the Fifth Amendment." However, he held that "[a]ffording 'use and fruits' immunity is an attractive and practical resolution here since both the legitimate needs of law enforcement and the constitutional rights of individuals are protected and enhanced." The State and the Attorney General urge that we adopt that reasoning. We decline to do so.

We recognize that we should "construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation" (*State v. Profaci*, 56 *N.J.* 346, 350, 266 *A.*2d 579 (1970)) and that, in appropriate cases, we "may engage in 'judicial surgery' to excise a constitutional defect or engraft a needed meaning" (*Right to Choose v. Byrne*, 91 *N.J.* 287, 311, 450 *A.*2d 925 (1982)). But the language of the statute here

leaves us unpersuaded that "the Legislature would want the statute to survive with appropriate modifications rather than succumb to constitutional infirmities." *Id.*

The Attorney General argues that *N.J.S.A.* 2C:35–10c reflects the Legislature's concern about the "dramatic increase in drug arrests" and "the inevitable adverse impact on the courts and speedy trial goals, and the need, especially in urban counties, to provide a viable downgrade option for certain simple possession cases which could be handled more expeditiously and appropriately as disorderly persons offenses." Moreover, the Attorney General urges that

the Legislature sought to provide an opportunity and incentive for persons lawfully to dispose of controlled substances. In so doing, the Legislature hoped to emphasize that citizens have a legal duty to avoid situations where they might come into possession of drugs, such as at parties or at certain mass public gatherings, such as rock concerts. Thus, besides the critical objective of encouraging drug users to seek help, the Legislature also sought to discourage group possession and use of drugs (commonly referred to as "passing the joint"), and sought to make gregarious drug users wary that someone among them would comply with the law, confiscate the substance being passed around and turn it over to the nearest law enforcement officer. This, of course, is all part of the Legislature's comprehensive efforts to eliminate to the greatest extent possible open and notorious drug use and to deter would-be users by convincing them that this is a dirty, secretive and risky business.

Accordingly the Attorney General acknowledges that the Legislature "intended to preclude providing any form of amnesty ... for crimes other than the offense defined in *N.J.S.A.* 2C:35–10c or the 'included' offense defined in *N.J.S.A.* 2C:35–10a."

We accept that statement of the legislative aims, which is fully consistent with the provision of *N.J.S.A.* 2C:35–10c that it not "be construed to preclude a prosecution or conviction for any other offense." But in light of those aims, we cannot confidently conclude that the Legislature would have wanted to provide this disorderly persons "downgrade option" if it had the potential of forestalling or impairing prosecutions for more serious offenses.

In *Marchetti,* the United States Supreme Court rejected a similar invitation to engraft use immunity to the federal wager-

ing tax statutes. The Court found that "the imposition of use-restrictions would directly preclude effectuation of a significant element of Congress' purposes" and that such restrictions would come "at the cost of hampering, perhaps seriously, enforcement of state prohibitions against gambling." 390 *U.S.* at 59, 88 *S.Ct.* at 708, 19 *L.Ed.*2d at 904. The Court concluded that:

the Constitution has entrusted to Congress, and not to this Court, the task of striking an appropriate balance among such values. We therefore must decide that it would be improper for the Court to impose restrictions of the kind urged by the United States.

390 *U.S.* at 60, 88 *S.Ct.* at 708–09, 19 *L.Ed.*2d at 904. The Court reached the same result in *Grosso*, 390 *U.S.* at 69, 88 *S.Ct.* at 714, 19 *L.Ed.*2d at 913 and *Haynes*, 390 *U.S.* at 99–100, 88 *S.Ct.* at 731–32, 19 *L.Ed.*2d at 934.

For like reasons, we conclude that it would be improper for us to impose use-and-fruits restrictions as urged by the Attorney General.

V

We thus conclude that under *N.J.S.A.* 2C:35–10c a proper assertion of the privilege against self-incrimination is a full defense to the prosecution. We do not hold that the statute is facially unconstitutional. As the Attorney General correctly points out (*ante* at 421, 607 *A.*2d at 195), the statute reaches situations in which the obligation to deliver drugs to the nearest law enforcement officer cannot produce incriminating disclosures. In *Marchetti, Grosso* and *Haynes*, the United States Supreme Court refrained from invalidating similar statutes and instead held only that they "may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination." *Marchetti*, 390 *U.S.* at 42, 88 *S.Ct.* at 699, 19 *L.Ed.*2d at 894; *see also Haynes*, 390 *U.S.* at 99, 88 *S.Ct.* at 731, 19 *L.Ed.*2d at 934 ("the rights of those subject to

the Act will be fully protected if a proper claim of privilege is understood to provide a full defense to any prosecution ...").

Although the record does not disclose when or how the claim of privilege was first advanced in the trial court, the prosecutor did not there urge that defendant had failed to claim the privilege in a proper fashion. In the absence of any showing or timely assertion of an effective waiver of the privilege, we will not infer such a waiver.

The judgment entered on the Law Division appeal is reversed. The earlier order for arrest of judgment and for judgment of acquittal is reinstated.