762 A.2d 668 (2000)
335 N.J. Super. 374
STATE of New Jersey, Plaintiff-Respondent,
v.
John W. CEREFICE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2000.
Decided November 27, 2000.
*669 Sara A. Friedman, argued the cause for appellant (Mautone, Horan & Redden, attorneys; W. Curtis Dowell, on the brief).
Thomas Cannavo, Assistant Prosecutor, argued the cause for respondent (David Millard, Ocean County Prosecutor; Mr. Cannavo, of counsel and on the brief).
Before Judges KEEFE and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
On March 18, 1999 defendant was charged in Long Beach Township with violating N.J.S.A. 39:4-50, driving while intoxicated (DWI), and N.J.S.A. 39:4-88, driving out of marked lanes. At that time, defendant, an attorney-at-law of this State, was the judge of the Long Beach Township Municipal Court. He has since resigned his position. His attorney filed a motion to suppress. Presumably because of defendant's position as judge of the municipal court in the municipality in which the offense arose, Judge Edward J. Turnbach, of the Law Division, was assigned to hear the case. In addition, the Ocean County prosecutor's office super-seded in the prosecution. Judge Turnbach denied the motion to suppress. Defendant had agreed to certain stipulations which the judge then placed on the record.
Relying upon the breathalyzer readings of .14 and .13, the judge found defendant guilty of DWI. In addition, the judge concluded that the Drinking Driving Report, and the On Scene Sobriety Check List, both of which were stipulated into evidence, convinced him, beyond a reasonable doubt, that defendant was, in fact, under the influence of alcohol at the time of the offense. The judge also found defendant guilty of failing to operate his vehicle entirely within a marked lane of travel. On the DWI charges, the judge sentenced defendant to pay a fine of $500, and a DWI surcharge of $100. In addition, he required defendant to perform thirty days of community service, and serve forty-eight hours in an Intoxicated Drivers Resource Center. The judge also suspended defendant's driver's license for two years, and imposed the appropriate minimum monetary penalties and assessments. Finally, the judge imposed a $50 fine on the violation of N.J.S.A. 39:4-88. All penalties have been stayed pending this appeal. We affirm.
According to the State's proofs, on March 18, 1999 at approximately 1:00 a.m., Sargeant Paul Hafner of the Long Beach Township Police Department was on patrol when he heard a radio transmission from Patrolman Gerard Traynor. Traynor said he was checking a house that was under construction, which had a light on in the bottom section of the house. Hafner proceeded towards the area of the house in order to offer Traynor assistance. As he was proceeding north on Long Beach Boulevard, he observed a silver four-door sedan "crossing over the rightthe right line that delineates the shoulder of the roadway, periodically crossing over and actually operating with his vehicle halfway over the shoulder, down the roadway." *670 He described Long Beach Boulevard as a "two-lane highway, with left lane. It's a shoulder on the left side of the left lane. There is a dotted line down the middle, separates the left and the right. And there is a short line on the right-hand lane."
Hafner said he was directly behind the sedan, and followed it for "[a] little over a mile." During that period of time he observed the vehicle cross over the solid shoulder line to the right "numerous times ... [and] was actually operating over the shoulder line for a period of time." However, Hafner conceded that his report did not say that defendant drifted over the line numerous times, but stated that defendant's vehicle drifted over the line and continued to proceed for a while over the line.
While following the vehicle, Hafner said he observed Traynor's vehicle with the interior light on, off the roadway. After passing Traynor's vehicle, Hafner continued north on Long Beach Boulevard for approximately two-tenths of a mile when he activated his overhead lights. The driver of the sedan tapped his brakes immediately, and proceeded to operate slowly for approximately five or six-tenths of a mile. He then made a right-hand turn onto Hudson Street, and proceeded "halfway up Hudson Street" before coming to a stop. At that point Hafner did not know who was operating the sedan. As Hafner approached the sedan he realized that defendant was the operator. Hafner said he asked defendant if he was okay, and he responded: "Was I driving bad?" Hafner asked defendant how much he had to drink, and defendant responded "too much." He said he asked defendant if he was okay because defendant was not looking at him, his head was down and he appeared to be disoriented.
At Hafner's request defendant exited his vehicle. Traynor had arrived on the scene. Hafner asked defendant to produce his driver's license, registration and insurance card. Defendant reached into his vehicle, produced his wallet, and gave Hafner his Social Security card.
Patrolman George Schnell testified that upon Hafner's request at the police station, he accompanied defendant outside in order to permit defendant to smoke a cigarette. According to Schnell, defendant said he "may have been drifting, but he didn't think he was doing that bad." Defendant also stated he felt he was drunk, and that it was ironic that he had made it from Toms River to the point where he had been stopped, approximately two miles from his house.
Defendant presented the testimony of Traynor, who was also a fourth year law student. He corroborated Hafner's testimony that he was investigating a light on in a building under construction and notified the dispatcher. According to Traynor, ordinarily other officers would not proceed to the area as backup. Traynor testified that he checked the home, determined that the light had been inadvertently left on, advised communications, and returned to his patrol car. Traynor said he was about to re-enter the road, looked to his left, and noticed two cars a distance away. He decided to wait, since it was "Saint Patrick's night, and see whatsee what comes up." He decided to back up a little to let the cars pass him since he "was hoping they wouldn't see me when I came behind them." Traynor said he observed no erratic driving, and one car was directly behind the other. He said it appeared as though "it was one car." Traynor said he never observed defendant's car cross over the white line onto the shoulder. In addition, he said he would "have been able to see it if it were."
Traynor also testified that later that evening he went to defendant's home to ask the results of the breathalyzer and what defendant did "to get pulled over."
Traynor said he reviewed Hafner's report and did not agree with its contents. Accordingly, he went to see Captain Leslie Houston. Houston told Traynor not to do *671 anything, and she would speak with the Chief. However, according to Traynor, Houston never got back to him. Traynor said he was then called to the Ocean County prosecutor's office, and was interrogated over a four hour period of time by a number of officers in what he characterized as "an inquisition." He said he was interrogated again the next day and was given a "Come to Jesus Speech, Come to Our Side Speech."
However, on cross-examination, Traynor conceded that he said in his statement that Hafner was in a better position to make the observations Hafner said he had made. He also admitted that Hafner could have made the observations, but that he [Traynor] was not in a position to see them, if they did occur. Traynor also conceded that although he had the best opportunity to observe the vehicles after he had backed further into the driveway because that was when he was closest to them, at that point, his view was completely obstructed by pine trees and other evergreens.
On this appeal defendant raises the following arguments:
POINT I THE STATE, HAVING THE BURDEN TO PROVE THAT THE POLICE OFFICER HAD PROBABLE CAUSE TO STOP THE DEFENDANT'S AUTO, HAS COMPLETELY FAILED TO DO SO UNDER ANY THEORY PROPOSED
POINT II THESE MOTOR VEHICLE SUMMONS [SIC] SHOULD BE DISMISSED BECAUSE OF THE PROSECUTOR'S MISCONDUCT IN THE INVESTIGATION AND PRESENTATION OF THE MATTER
Although not raised by the parties, we initially consider the question of whether this appeal from a conviction for a motor vehicle offense should be filed in the Law Division, pursuant to R. 3:23-1, or in the Appellate Division, pursuant to R. 2:2-3(a)(1), since the case was heard by a Law Division judge in the first instance, rather than a municipal court judge. We conclude that the appeal is properly filed in the Appellate Division, and that the time limitations set forth in R. 2:4-1(a) apply.
As a general rule, review of a judgment of conviction in a criminal action or proceeding in a court of limited criminal jurisdiction shall be in the Law Division. R. 3:23. Historically, the Chief Justice of the Supreme Court designated the county district courts, the predecessor of the Special Civil Part, in certain counties, to hear criminal, quasi-criminal and penal actions.[1] In State v. Natoli, 237 N.J.Super. 52, 54, 566 A.2d 1167 (App.Div.1989) we held that when the Special Civil Part entertains a traffic matter, it does so as a court of limited criminal jurisdiction and, therefore, an appeal from a conviction entered by that court must be brought de novo to the Law Division pursuant to R. 3:23. That holding, however, was superseded by a 1992 amendment to former R. 7:8-1 now R. 7:13-1). The amendment specifically provided that "[a]ppeals from judgments of conviction and interlocutory orders in municipal court actions heard in the Law Division, Special Civil Part, pursuant to R. 6:1-2(a)(5) shall be taken to the Appellate Division pursuant to Rules 2:2-3(a)(1) and 2:2-4, respectively." Accordingly, an appeal from a judgment or interlocutory order in a municipal court action heard in the Law Division, Special Civil Part, is appealed to the Appellate Division.
In State v. Patton, 256 N.J.Super. 413, 416-17, 607 A.2d 191 (App.Div.1992) rev'd. on other grounds, 133 N.J. 389, 627 A.2d 1112 (1993), relying on Natoli, supra, we held that in a disorderly persons prosecution, which is initially cognizable in the municipal court, the State's appeal from a post-conviction order declaring N.J.S.A. 2C:35-10(c) unconstitutional would be to *672 the Law Division, notwithstanding the fact that the trial was conducted by a Law Division judge. R. 7:8-1 (now R. 7:13-1) was again amended, effective September 1996, to designate the Appellate Division as the appellate court not only when the Special Civil Part sits initially on a municipal court action, but also when the Law Division so acts.
Part VII of our Court Rules govern the practice in the municipal courts. On October 6, 1997 Part VII was comprehensively revised to make clear that the rules in Part VII govern the practice and procedure in all non-indictable matters prosecuted in the municipal court, and that the Part III rules govern the practice and procedure in all indictable matters prosecuted in the municipal courts and non-indictable matters prosecuted in the Superior Court. Pressler, Current N.J. Court Rules, comment on R. 7:1 (2001). At that time, R. 7:8-1 became R. 7:13-1.
While R. 7:13-1 retained the provision that appeals from municipal court actions heard in the Law Division, Special Civil Part, shall be taken to the Appellate Division, it did not carry over the provision that appeals taken from municipal court actions heard by a Law Division judge should also be to the Appellate Division. Accordingly, R. 7:13-1, in its present form, is silent as to where an appeal should be taken when, as here, a Law Division judge is assigned to hear a municipal court matter. Judge Pressler provides that the provision was not carried over to R. 7:13-1 presumably because of the rarity of a Law Division judge, other than a Special Civil Part judge, being assigned to hear a municipal court matter. Pressler, Current N.J. Court Rules, comment 1 on R. 2:2-3, comment on R. 3:23, and comment on R. 7:13. Those comments also suggest that it is clear that, "should that unlikely event occur, the appeal from the judgment of conviction should be taken to the Appellate Division."
We also understand that the comprehensive revision to Part VII began before the amendment to R. 7:8-1 (now R. 7:13-1), but was concluded after that amendment. It may be that the failure to carry over the provision regarding a Law Division judge was merely an oversight. In any event, we conclude that appeals from municipal court matters heard by a Law Division judge should be treated the same as an appeal of a case heard by a Special Civil Part judge and, in each event, the appeal should be to the Appellate Division, rather than the Law Division. Certainly, it is more practical to have an Appellate Division judge review the actions of a Law Division judge, rather than have one Law Division judge pass upon decisions made by another Law Division judge.[2]
Although not set forth in a separate point heading, as required by R. 2:6-2(a)(5), defendant contends that we must consider this a trial de novo on the record, since this is an initial appeal from a conviction of a matter cognizable in the municipal court, even though a Superior Court, Law Division judge tried the case. We disagree. The difference is that de novo consideration requires the reviewing judge to determine the case completely anew on the record made before the trial judge, giving due, although not necessarily controlling, regard to the opportunity of the judge to judge the credibility of the witnesses, whereas, this court on appeal does not weigh the evidence anew but merely determines whether the evidence adduced at trial supports the conviction. State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). Stated another way, this court is governed by the substantial evidence rule while a de novo review contemplates an independent fact-finding function in respect of defendant's guilt or innocence. In other words, the judge in a trial de novo *673 must make his or her own independent findings of fact since his or her function is not the appellate function governed by the substantial evidence rule, but rather an independent fact-finding function in respect of defendant's guilt or innocence. State v. Avena, 281 N.J.Super. 327, 333, 657 A.2d 883 (App.Div.1995), citing State v. Ross, 189 N.J.Super. 67, 75, 458 A.2d 1299 (App.Div.) certif. denied, 95 N.J. 197, 470 A.2d 419 (1983). Nevertheless, even on de novo review, the Law Division judge must give due, although not necessarily controlling, regard to the opportunity of the trial judge to judge the credibility of the witnesses. The reviewing court must give deference to the findings of the trial judge which are substantially influenced by his or her opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy. Johnson, supra, 42 N.J. at 161-62, 199 A.2d 809. Appellate courts should defer to trial court's credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record. State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999).
We conclude that an appeal to this court from a conviction entered by a Law Division judge sitting in the municipal court as a trial judge is not de novo. Our Supreme Court has observed that the initial reasons for a trial de novo was because of perceived "weaknesses inherent in the system of local courts whose judges were locally appointed, served part-time, and frequently were not even members of the Bar." State v. DeBonis, 58 N.J. 182, 188, 276 A.2d 137 (1971). The Court went on to observe that
[a] structure of that kind could not command the complete confidence of the public. Although the municipal court of today is much improved over its ancestors, the structure remains unsound. There are 523 municipal courts. Their judges are still appointed locally, still serve part-time, and although membership at the Bar is now required (subject to grandfather clause, N.J.S.A. 2A:8-7), this antiquated system of local courts cannot inspire the confidence with which the public approaches our county courts. We intend no reflection upon the many judges of the municipal courts who work hard and conscientiously notwithstanding the shortcomings of the system itself. Rather we recognize that, so long as this system endures, the need remains to afford the litigant, frequently a stranger to the locality, the opportunity to seek a redetermination by a court at a higher level ...

Id. at 188-89, 276 A.2d 137.
We recognize that there has been substantial improvement in our municipal courts since 1971. However, that does not mean that there should be a trial de novo in this court. Simply put, the reasons that led to trials de novo from municipal court conviction are not present when a Law Division judge sits in the municipal court.[3]
Here, Judge Turnbach found Hafner credible and specifically found that Traynor lacked credibility. Although not required to do so, Judge Turnbach gave detailed reasons why he found Hafner credible and Traynor not credible. Giving those determinations deference to which they are entitled, we conclude that the judge's ultimate conclusion that Hafner "had probable cause to effectuate the motor vehicle stop" could reasonably have been reached on sufficient credible evidence present in the record as a whole. State v. Johnson, supra, 42 N.J. at 161-62, *674 199 A.2d 809.[4] Accordingly, he correctly denied the motion to suppress.
We have carefully considered the record, the briefs filed, the applicable law, and the arguments of counsel and conclude that the issue raised in Point II of defendant's brief is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed. The Law Division must now take the appropriate steps to assure that defendant's sentence, which was stayed pending appeal, is now executed.
NOTES
[1] R. 6:1-2(a)(5) now specifically provides that municipal court actions, pursuant to R. 7:1 are cognizable in the Special Civil Part in the counties of Bergen, Hudson and Warren.
[2] We refer the matter to the Supreme Court's Criminal Practice and Municipal Court Committees for their consideration.
[3] Perhaps there is no longer a need for a trial de novo upon appeal from a municipal court conviction. Retention of appeals de novo has been considered from time to time by the Supreme Court's Criminal Practice Committee. See Edwin H. Stern, Municipal Appeals, 4 CRIM.JUST.Q. 7 (1976). However, we need not, and do not, express any opinion on that subject.
[4] We note that a police officer need only have an articulable and reasonable suspicion that the driver has committed a motor vehicle offense, in order to effectuate a stop of the vehicle. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); State v. Locurto, supra, 157 N.J. at 470, 724 A.2d 234, State v. Smith, 306 N.J.Super. 370, 380, 703 A.2d 954 (App.Div. 1997). Moreover, the judge appropriately considered the fact that defendant was intoxicated to be corroborative of Hafner's contention that defendant had indeed operated the vehicle in the manner testified to by Hafner. Locurto, supra, 157 N.J. at 474, 724 A.2d 234.