**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3606-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM J. DAVENPORT,

     Defendant-Appellant.

_____

Argued April 30, 2024 – Decided May 21, 2024

Before Judges Gooden Brown and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Municipal Appeal No. 07-08-22.

Keith George Napolitano Jr. argued the cause for appellant (Levow DWI Law, PC, attorneys; Evan M. Levow, of counsel and on the brief; Keith George Napolitano Jr., on the brief).

Karen A. Lodeserto, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Carolyn Murray, Acting Sussex County Prosecutor, attorney; Karen A. Lodeserto, of counsel and on the brief).

PER CURIAM

Defendant William Davenport appeals from a Law Division order, which denied his motion to suppress evidence obtained after the warrantless stop of his motor vehicle by law enforcement. Both the municipal court judge and the Law Division judge determined the stop was valid relying upon the community caretaking exception from "unreasonable searches and seizures," and the general requirement a warrant issue upon probable cause based on the Fourth Amendment to the United States Constitution and the New Jersey Constitution. Defendant entered a conditional guilty plea to driving while intoxicated (DWI) pursuant to N.J.S.A. 39:4-50 in the municipal court.

Defendant appeals from the Law Division order and argues:

> NO PROBABLE CAUSE OR LEGAL REASON
> EXISTED TO STOP [DEFENDANT]'S VEHICLE:
> ALL EVIDENCE OBTAINED IN THIS MATTER
> MUST BE SUPPRESSED.

After our review of the record and applicable legal principles, we affirm, but for different reasons than those expressed by the Law Division.

I.

On November 3, 2020, defendant was charged with DWI pursuant to N.J.S.A. 39:4-50 in Hardyston. Defendant filed a motion to suppress evidence, claiming no probable cause or other valid legal reason permitted the stop of his

A-3606-22

vehicle and all evidence of DWI obtained after the stop was inadmissible. Thereafter, the municipal court held a hearing over two non-consecutive days.

The facts that follow are taken from the testimony and other evidence presented at the motion hearing in the municipal court, including a recording of a 911 call made on November 2, 2020.

At the hearing, the State called Patrolman Stickle who was employed by the Hardyston Police Department and testified he participated in the stop of defendant's vehicle. During his testimony a recording of a 911 call was played into evidence. The recording indicated that on November 2, 2020, a 911 call was received informing the 911 operator that a "guy in . . . a big silver truck" has been "arguing with [his] girlfriend or wife." The caller informed the operator the argument was loud and the silver pickup truck was circling and going into the parking lot and "peeling out . . . around the complex." The 911 caller asked for an officer to "come over." The caller stated the location was Shady Lane in Hardyston and that "the guy lives across the street." The caller stated the argument finished "like five minutes ago." The caller informed the operator that "he'll argue with her on and off, and then speed around the whole . . . I think her parking lot specifically and peeled out." The 911 caller stated he was located across from Shady Lane.

A-3606-22

Officer Stickle testified that he received a dispatch call at 11:53 p.m. He testified he was not given a description of the occupant of the vehicle or whether the occupant was male or female. He testified he was not given any information concerning the 911 caller but was aware the caller lived at 76 Shady Lane. He testified the vehicle was described as a "big silver pickup truck." Officer Stickle testified he received a "call to respond to the area of 103 Shady Lane to a report of a silver pickup truck driving erratically."

He further testified concerning the contents in his police report that "'[t]he caller advised dispatch that he observed a male and female arguing in the parking lot for several minutes . . . following the argument he saw the male party driving erratically in the area in a silver pickup.'" Officer Stickle testified he did not observe any erratic driving by defendant. Officer Stickle further testified he was near Shady Lane to investigate erratic driving and "a possible domestic." He testified the incident "was just reported to us through dispatch that . . . the anonymous caller reported a silver F-150 pickup truck revving its engine, peeling out in the parking lot and driving at a high rate of speed in the area following a verbal argument that the caller witnessed in the parking lot of 103 Shady Lane."

4

After the hearing, the municipal court judge denied defendant's motion for reasons set forth in an oral opinion primarily relying upon the community caretaking exception for the warrantless stop and search. Thereafter, defendant conditionally pled guilty to N.J.S.A. 39:4-50 and was sentenced as a second offender to a one-year license suspension, thirty days community service, forty-eight hours with the Intoxicated Driver Resource Center, two years use of an interlock device following the suspension. He was also assessed fines and costs. The municipal court stayed the sentence and defendant appealed the order to the Law Division.

After defendant's appeal was reinstated following a dismissal for lack of prosecution and briefs were filed, the Law Division judge heard arguments of counsel on June 23, 2023. In a July 24, 2023, written opinion, the trial judge denied defendant's appeal, relying on the community caretaking exception to the warrant and probable cause requirements required to stop a motor vehicle. A corresponding order was entered that same date.

II.

In an "appeal from a de novo trial on the record, we . . . consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001), overruled on other grounds, State v.

Ciancaglini, 411 N.J. Super. 280 (App. Div. 2010). Our scope of review is limited; we are bound to uphold the Law Division's findings if supported by sufficient, credible evidence in the record. State v. Johnson, 42 N.J. 146, 162 (1964). Only if the Law Division's decision was so clearly mistaken or unwarranted "that the interests of justice demand intervention and correction," can we review the record "as if [we] were deciding the matter at inception and make [our] own findings and conclusions." Ibid. But like the Law Division, we are in no position to "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence," and should therefore defer to the municipal court's credibility findings. State v. Barone, 147 N.J. 599, 615 (1997); State v. Cerefice, 335 N.J. Super. 374, 382-83 (App. Div. 2000); see also Trusky v. Ford Motor Co., Lincoln-Mercury Div., 19 N.J. Super. 100, 104 (App. Div. 1952) ("[A]n appellate court . . . 'has to operate in the partial vacuum of the printed record,' . . . .").

However, "a reviewing court owes no deference to the trial court in deciding matters of law." State v. Mann, 203 N.J. 328, 337 (2010). We owe no deference to either the trial court's interpretation of the law or to its determination of the legal consequences that result from its fact-finding. State v. Stas, 212 N.J. 37, 49 (2012).

6

A similar standard applies to a court's decision to deny or grant a defendant's motion to suppress evidence. We defer to the trial court's factual findings on a motion to suppress, "unless they were clearly mistaken or so wide of the mark that the interests of justice require[] appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007) (internal quotation marks omitted). However, we exercise plenary review of a trial court's application of the law to the facts on a motion to suppress. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

The Fourth Amendment to the United States Constitution, and the New Jersey Constitution, protect against "unreasonable searches and seizures," and generally require a warrant issued upon probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. However, the United States Supreme Court has long recognized the special nature of police-citizen contact stemming from "the extensive regulation of motor vehicles and traffic," and "the frequency with which a vehicle can become disabled or involved in an accident on public highways." Cady v. Dombrowski, 413 U.S. 433, 441 (1973). "Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature." Ibid.

The United States Supreme Court has held that automobile searches conducted as part of these "community caretaking functions" are not governed by the warrant requirement, see id. at 441, 447-48, or by "[t]he standard of probable cause [that] is peculiarly related to criminal investigations, not routine, non[-]criminal procedures," Colorado v. Bertine, 479 U.S. 367, 371 (1987) (quoting South Dakota v. Opperman, 428 U.S. 364, 370 n.5 (1976)). Instead, community caretaking searches must meet only the Fourth Amendment's "general standard of 'unreasonableness.'" Cady, 413 U.S. at 448.

Our Supreme Court has similarly recognized that "police officers acting in a community-caretaking capacity 'provide "a wide range of social services" outside of their traditional law enforcement and criminal investigatory roles.'" State v. Vargas, 213 N.J. 301, 323 (2013) (quoting State v. Edmonds, 211 N.J. 117, 141 (2012)). Thus, our Court has adopted the community caretaking doctrine as an exception to the warrant and probable cause requirements. State v. Harris, 211 N.J. 566, 581 (2012). Although our Court has narrowed its applicability regarding searches of homes, e.g., Vargas, 213 N.J. at 305; Edmonds, 211 N.J. at 143, the Court has applied the community caretaking doctrine to automobile searches, e.g., State v. Diloreto, 180 N.J. 264, 277, 280-81 (2004); State v. Mangold, 82 N.J. 575, 585 (1980).

The community caretaking doctrine does not require "'that the police demonstrate probable cause or an articulable suspicion to believe that evidence of a crime will be found.'" Diloreto, 180 N.J. at 276 (quoting Byrnes, New Jersey Arrest, Search and Seizure § 14:1-1, at 289 (2003)). Instead, "[w]hen courts review those forms of citizen-police encounters they 'employ a standard of reasonableness to determine the lawfulness of police conduct.'" Ibid. (quoting Byrnes, § 14:1-1, at 289).

## III.

The trial judge found the stop of defendant's vehicle without a warrant or sufficient probable cause was permitted under the community caretaking exception. Like the municipal court judge, he determined that the police officer who testified at the hearing concerning the stop "received a dispatch stating that a silver pickup truck was involved in an ongoing domestic dispute incident around 103 Shady Lane just before midnight." The judge found the officer testified he "was not responding to suspicions that the driver of the silver pickup truck was intoxicated but that there was a concern for an ongoing domestic dispute in progress." The judge found "[d]ispatch reported to [the officer] that the silver pickup truck had been 'leaving the area and circling the street,'" and

that the vehicle was a "'big silver pickup truck.'"  The judge found the officer also

> testified on cross-examination that he was not dispatched to investigate a crime and he acknowledged that being sent to a scene due to a report of a domestic dispute does not mean any crime has been committed; in fact, [the officer] agreed with defense counsel that a domestic dispute is not a crime and that people can have arguments . . . it's not criminal.  (omission in original).

The judge further found the circumstances presented to the officer were "objectively reasonable under the totality of the circumstances for law enforcement to investigate whether the driver of the silver pickup truck was in distress or need of assistance."

In addition, the judge found the officer "did not have any information to believe that [d]efendant may have been operating his vehicle while intoxicated at the time that he stopped his car[,]" and "[n]ot[h]ing suggests any pretext of using the community caretaking standard to effectuate a motor vehicle stop because of some hunch that the driver might be operating the vehicle while under the influence."  Additionally, the judge, relying upon our Supreme Court's holding in State v. Bogan, 200 N.J. 61, 73 (2009), found the "interaction" between the officer and defendant was "totally divorced from the detection,

investigation, or acquisition of evidence relating to the violation of a criminal statute."

The judge, relying upon State v. Scriven, 226 N.J. 20 (2016), found the officer "was conducting a welfare check in a community caretaking function to ensure that the driver 'did not need any medical assistance and . . . was not the victim of a domestic violence assault and that there was no violent criminal in the area.'" (omission in original) (citing Scriven, 226 N.J. at 39).

When considering the factual evidence adduced at the municipal court hearing as applied by the Law Division judge in his findings, our de novo review of the record constrains us to conclude differently concerning the applicability of the community caretaking exception. The undisputed facts show the information obtained from the 911 call showed on the date in question, at about midnight, the driver of a silver pickup truck was "peeling out" and was arguing with his wife or girlfriend in the vicinity of 103 Shady Lane. The caller also stated it was not the first time this type of incident had occurred. The officer admitted that he did not receive any other information other than a silver pickup truck was involved in a domestic incident at the time of the call but also testified he listened to the tape of the 911 call and the caller revealed that "a silver F-150 pickup truck [was] revving its engine, peeling out in the parking lot and driving

11

at a high rate of speed in the area following a verbal argument that the caller witnessed in the parking lot of 103 Shady Lane."

The 911 caller disclosed information on November 2, 2020, that a male and female were arguing loudly at approximately midnight and the driver of a silver pickup truck was driving erratically, revving its engine, peeling out and driving at a high rate of speed which could support possible violations of the traffic act for careless or reckless driving pursuant to N.J.S.A. 39:4-97 and N.J.S.A. 39:4-96 respectively.

N.J.S.A. 39:4-97 governing (careless driving) states:

> A person who drives a vehicle carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving.

N.J.S.A. 39:4-96 pertaining to (reckless driving) states, in pertinent part:

> A person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving and be punished by imprisonment in the county or municipal jail for a period of not more than [sixty] days, or by a fine of not less than $50[] or more than $200[], or both.

We determine the trial judge's finding that the motor vehicle stop was not based on information of a possible DWI occurring, and therefore divorced from

A-3606-22

a criminal offense, was too narrow. The stop was clearly based on dispatch information of erratic driving which provided information of potential violations of traffic offenses as well as a possible domestic situation. Once the officer was provided this information, the stop was not a welfare check, as found by the court, but was more of an investigation concerning, in some part, potential traffic offenses being committed by the driver of the silver pickup or because a domestic dispute may have occurred.

Based on the undisputed evidence provided in the record including the 911 call and the officer's testimony, we conclude this information was not completely divorced from the detection, investigation, or acquisition of evidence relating to a motor vehicle violation or possible domestic situation. In the least, the officer was dispatched concerning a complaint of erratic driving by the driver of a silver pickup truck, which is a sufficiently reasonable circumstance that a motor vehicle violation may have occurred.

We conclude the judge's finding, that the community caretaking exception applied to the motor vehicle stop, was a misapplication of the law. We determine the undisputed factual evidence when applied to the applicable law does not support the judge's finding that the community caretaking exception applies to the stop and subsequently acquired evidence resulting in the DWI

13

charge against defendant. The facts adduced at the municipal court hearing do not sufficiently support the court's findings that the driver may have needed medical assistance, may have been a victim of domestic violence, or that there may have been a violent criminal in the area. The community caretaking exception was not borne out by the undisputed facts of this matter and its application was inappropriate. We therefore conclude the denial of defendant's motion to suppress based on the community caretaking exception was not supported by the evidence.

IV.

Because we have concluded the factual findings of the municipal judge relied upon by the Law Division judge do not satisfy the legal requirements necessary to invoke the community caretaking exception and was a misapplication of the law, we determine our de novo intervention is necessary and appropriate.

"It is a longstanding principle underlying appellate review that 'appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion.'" State v. Washington, 453 N.J. Super. 164, 203-04 (App. Div. 2018) (omission in original) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). "[B]ecause an appeal is taken from a trial court's ruling rather than

reasons for the ruling, we may rely on grounds other than those upon which the trial court relied." Id. at 204 (alteration in original) (quoting State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011)); see also, e.g., Hayes v. Delamotte, 231 N.J. 373, 387 (2018) ("A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning."); State v. Maples, 346 N.J. Super. 408, 411-12, 416-17 (App. Div. 2002) (noting that "we affirm or reverse judgments and orders," and finding a valid basis for a warrantless search even though the trial court "had clearly applied the wrong legal standard" in assessing State's burden to show reasonable suspicion).

The ultimate question is whether the existing factual record is sufficient to rule on the legal issue. See Scott, 229 N.J. at 480 (considering the State's alternative legal justification for admitting evidence even though it had not been raised below because the record was fully developed and not "barren of facts that would shed light on [the] issue" (quoting State v. Witt, 223 N.J. 409, 418 (2015) (alteration in original))); see also State v. Roman-Rosado, 462 N.J. Super. 183, 202-03 (2020), aff'd as mod. sub. nom., State v. Carter, 247 N.J. 488 (2021) (considering a different theory the State raised on appeal to support the permissibility of a search because the factual issues "essentially invoke[d] the same concerns" and there was "no unjust result").

Our review of the legal arguments contained in defendant's brief shows he did not address nor present an argument concerning the community caretaking exception even though the municipal judge and the Law Division judge denied his motion to suppress evidence based on such. Instead, his arguments focused solely on the investigatory stop exception. The State's briefing touched on the investigatory stop exception standard as well as the community caretaking exception. We conclude the arguments of the parties contained in their respective briefings and at oral argument, which addressed the standards for investigatory motor vehicle stops, are sufficient for us to determine the issues on appeal, and that supplemental briefing and arguments concerning this issue are not necessary.

We turn now to the applicable legal standards concerning investigatory motor vehicle stops. Consistent with the Fourth Amendment of the United States Constitution and its analog, Article I, paragraph 7, of the New Jersey Constitution, "'a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense.'" State v. Locurto, 157 N.J. 463, 470 (1999) (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)); Delaware v. Prouse, 440 U.S. 648, 663 (1979) (noting that people are not "shorn of [all Fourth

Amendment] interests when they step from the sidewalks into their automobiles").

"Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" State v. Rosario, 229 N.J. 263, 272 (2017) (omission in original) (quoting State v. Stovall, 170 N.J. 346, 356 (2002)). "The 'articulable reasons' or 'particularized suspicion' of criminal activity must be based upon the law enforcement officer's assessment of the totality of the circumstances . . . ." State v. Davis, 104 N.J. 490, 504 (1986). "There must be 'some objective manifestation that the person [detained] is, or is about to be engaged in criminal activity.'" State v. Pineiro, 181 N.J. 13, 22 (2004) (alteration in original) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). The "[r]easonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest." Stovall, 170 N.J. at 356.

This test is "highly fact sensitive and, therefore, not readily, or even usefully, reduced to a neat set of legal rules." State v. Golotta, 178 N.J. 205, 213 (2003) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)). "For analytical

purposes . . . , a stop founded on a suspected motor vehicle violation essentially is governed by the same case law used to evaluate a stop based on suspected criminal or quasi-criminal activity." Ibid.  Importantly, "the State is not required to prove that the suspected motor-vehicle violation occurred." Locurto, 157 N.J. at 470.

In Golotta, the Court considered a strikingly similar fact pattern to the one before us.  There, the Court addressed a DWI conviction of a driver based on information obtained from a 911 caller which the Court concluded created reasonable suspicion to support an investigatory stop.  178 N.J. at 209-10.  In that matter, the 911 caller described the defendant's erratic driving in considerable detail including his location and the make of the car.  Ibid.

Our Court also noted "an intoxicated or erratic driver poses a significant risk of death or injury to himself and to the public and, as such, that factor is substantial when evaluating the reasonableness of the stop itself."  Id. at 218.

The Court determined for information received from an anonymous 911 informant to be reliable, the caller must provide to the police "a sufficient quantity of information, such as an adequate description of the vehicle, its location and bearing, or 'similar innocent details . . . .'"  Id. at 222 (quoting

United States v. Wheat, 278 F.3d. 722, 731 (8th Cir. 2001), cert. denied, 537 U.S. 850 (2002)).

After our de novo review of the record, we determine the undisputed evidence conclusively shows the 911 caller lived near defendant and the call provided contemporaneous and detailed information of the time and location of the incident as well as a description of the motor vehicle. The caller stated the silver pickup truck was "peeling out" and circling the parking lot and complex on the night in question on or near Shady Lane. The caller also provided information that the driver of the vehicle was arguing with his wife or girlfriend loudly enough to be heard by the caller who lived across the street. The caller also informed the 911 operator that this was not the first incident where arguments between these same individuals were heard and observed.

We conclude the 911 caller provided sufficient reliable, contemporaneous information describing (1) the erratic driving of a silver pickup truck at around midnight on or near Shady Lane and (2) a loud argument occurring between the driver and his wife or girlfriend. These factual findings made by the trial judge support the minimal level of objective justification for instituting the stop of defendant's motor vehicle based on his erratic driving reported by the 911 caller. The dispatch call providing this information created sufficient reasonable

suspicion for the police to undertake an investigatory stop of defendant's vehicle near the location, which was undertaken shortly after the time of the reported event supplied by the 911 caller. The events described by the 911 caller concerning defendant's erratic driving, in the least, were sufficient to investigate motor vehicle violations, including careless driving pursuant to N.J.S.A. 39:4-97.

In addition, as our Court stated in Golotta:

> The final factor warranting a reduced degree of corroboration is the reality that intoxicated drivers pose a significant risk to themselves and to the public. See State v. Tischio, 107 N.J. 504, 519 (1987) (describing such drivers as "moving time bombs") (internal citation and quotation marks omitted), appeal dismissed, 484 U.S. 1038 (1988). "The combination of an undue ingestion of alcohol and the resultant mishandling of automobiles causes awesome carnage on our highways[.]" State v. Carey, 168 N.J. 413, 429 (2001) (internal citation and quotation marks omitted). That reality imposes a duty on law enforcement officers to take appropriate steps within constitutional and statutory boundaries to maintain the safety of New Jersey's roads. State v. Greeley, 178 N.J. 38, 49 (2003) (recognizing "continuing duty of the police to safeguard the public" from "dangers" imposed by intoxicated persons and also recognizing "risks posed by an intoxicated person to himself").

> [178 N.J. at 221.]

Having determined that the information provided by the 911 caller was sufficiently reliable under <u>Golotta</u>, we conclude the stop of defendant's vehicle was based on sufficient reasonable suspicion that motor vehicle violations may have occurred based on the report of defendant's erratic driving and therefore, the stop of defendant's motor vehicle was an appropriate investigatory stop. This, coupled with our Court's recognition in <u>Greeley</u>, 178 N.J. at 49, concerning the dangers intoxicated drivers pose to the public as well as themselves, we conclude the Law Division judge's denial of defendant's motion to suppress evidence obtained after the motor vehicle stop, ultimately resulting in defendant's guilty plea and conviction for DWI, was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3606-22