916 A.2d 1051 (2007)
391 N.J. Super. 1
STATE of New Jersey, Plaintiff-Respondent,
v.
Benigno ROSARIO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 2006.
Decided February 27, 2007.
*1052 James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Smith, of counsel and on the brief).
Catherine A. Foddai, Assistant Prosecutor, argued the cause for respondent (John L. Molinelli, Bergen County Prosecutor, attorney; Ms. Foddai, of counsel and on the brief).
Before Judge STERN, COLLESTER and MESSANO.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant appeals from an order of August 19, 2004 denying his motion "to enforce the plea agreement." Defendant argues that he "was denied his Fourteenth Amendment right to due process of law and his state constitutional right to fundamental fairness when the State refused to honor the terms of a bi-state plea offer after defendant had pled guilty in New York State pursuant to that agreement." As a result of the "non-enforcement" of the purported agreement, defendant went to trial in Bergen County, New Jersey, and was convicted of eleven counts of an indictment which included purposeful or knowing murder, two counts of kidnapping, and two counts of armed robbery.[1]
Defendant contends "it was especially unfair that defendant was not represented by a New Jersey attorney when the prosecutor's office negotiated the plea with a New York lawyer unfamiliar with this [S]tate's sentencing laws," so that the negotiated disposition leading to his guilty plea in New York and his subsequent waiver of extradition and return to New Jersey should be enforced.
As already noted, after the pretrial denial in the Law Division of his motion to enforce the plea offer, defendant was tried by jury and convicted of eleven counts. He was sentenced to an aggregate of life *1053 imprisonment with a sixty year parole disqualifier to run consecutive to a New York sentence being served. We affirmed the convictions and sentence. Defendant's petition for certification was granted, and the matter was remanded to the Law Division for an evidentiary hearing on the enforcement claim. State v. Rosario, 167 N.J. 627, 772 A.2d 930 (2001).
On remand, the trial judge conducted an evidentiary hearing and found "no meeting of the minds" or enforceable agreement notwithstanding the prosecutor's letter of December 6, 1995 offering defendant concurrent sentences in exchange for a guilty plea to aggravated manslaughter and armed robbery. The letter also indicated that the State would seek an aggregate sentence of thirty years, with one-half of that period to be served before parole eligibility, but would ask that the sentence be made to run consecutively to the New York sentence.

I.
Defendant was one of the suspects in the kidnapping of Robert Hippman on August 4, 1994 and the kidnapping and murder of James Polites on August 5, 1994. Defendant was seventeen years old at the time. However, before charges were filed against defendant for these crimes, he was arrested and incarcerated for murder in New York.
While plea discussions were occurring in New York, his New York attorney, Stanley Birnbaum ("Birnbaum"), and Suffolk County District Attorney, Peter Timmons ("Timmons"), commenced discussions with the Bergen County Prosecutor's Office designed to dispose of all outstanding charges by virtue of a negotiated disposition in both states.
According to Birnbaum, who testified at the remand hearing ordered by the Supreme Court, he had two conversations with Bergen County Assistant Prosecutor Patricia Baglivi ("Baglivi") before defendant pled guilty in Suffolk County, New York, on September 27, 1995. Birnbaum testified that the first conversation took place on September 20, 1995, and involved a discussion of the charges pending against defendant in New Jersey. Birnbaum claimed that, during the second conversation on September 22, 1995, Baglivi detailed the plea offer that New Jersey would extend to defendant if he pled guilty to second degree murder in New York, which was the disposition sought by the District Attorney in New York. Birnbaum testified that he believed this offer, extended by Baglivi on September 22, 1995, was a "final offer," which led him to counsel defendant to enter his guilty plea in New York.
Birnbaum also claimed that District Attorney Timmons was aware of the plea offer made by Baglivi and that he "was told" that Timmons could speak on behalf of the Bergen County Prosecutor's office during the New York proceedings. Birnbaum testified that he believed that the offer was "effectuated" on September 27, 1995, when defendant pled guilty to second degree murder in New York.
Birnbaum further testified that he called Baglivi by phone on September 29, 1995 and December 5, 1995, following defendant's guilty plea in New York. According to Birnbaum, he explained to Baglivi that there was some confusion during the plea on September 27th over what sentence defendant would be receiving in New Jersey. Birnbaum testified that Baglivi had previously told him the sentence in New Jersey would be ten to thirty years, but that during the plea on September 27th, Timmons indicated that he believed the sentence was to be "seven to thirty" years. According to Birnbaum, he explained this discrepancy to Baglivi during their telephone conversation, and, as a result, Baglivi *1054 confirmed the final plea offer in a letter dated December 6, 1995.
Birnbaum also testified that, on November 28, 1995, he contacted a New Jersey official named Nick Bruno "regarding a `5-A application,'" for the purpose of having a New Jersey attorney assigned to defendant "so he could effectuate the terms that were worked out in our plea on September 27th, 1995." According to Birnbaum, during that conversation, he inquired as to whether "there was an expeditious way to bring [defendant] to New Jersey [but] was told that it would have to go through the system," where defendant would "have to be remanded . . . to the New York State Correctional Facility after sentence, brought upstate, lodged, and then transferred by writ." Birnbaum further claimed that he was told that defendant's New Jersey counsel would follow up on getting defendant returned to New Jersey for purposes of entering the plea. According to Birnbaum, defendant "was unequivocal that he intended to accept the plea in New Jersey."
Assistant Prosecutor Baglivi also testified at the remand hearing. While acknowledging that she did have conversations with Birnbaum, she had "no specific recollection of any conversation" other than the one on December 5, 1995. According to Baglivi, it was during this conversation that she and Birnbaum reached the agreement that was "formalized" in her letter which she sent to him the next day. The letter, dated December 6, 1995, was addressed to both Timmons and Birnbaum, and stated:
Per my conversation with Mr. Birnbaum on December 5, 1995, the State of New Jersey is willing to offer the defendant a plea to one count of aggravated manslaughter for the Edgewater homicide, and one count of armed robbery for the Hackensack incident, both counts to run concurrent to each other. This plea would be contingent upon a plea to felony murder in New York.
The sentencing range for aggravated manslaughter is 10 to 30 years and for armed robbery, 10 to 20 years. The Court is free to impose any sentence within that range and may order that one-third to one-half of any sentence imposed be served before being eligible for parole. The Court can order that the sentence be either consecutive or concurrent to the sentence in New York.
Assuming defendant agrees to this negotiated plea, the State would seek the 30 year sentence and ask the Court to impose one-half without parole. Additionally, the State will ask the Court to run the sentence consecutive to the New York sentence.
If defendant wishes a trial in New Jersey and were convicted of either murder or felony murder, the minimum sentence is 30 years without parole.
If you have any questions, please feel free to contact me.
However, according to Baglivi, despite their conversation of December 5, Birnbaum never informed her that defendant had already pled guilty on September 27, 1995. Baglivi recalled speaking to Birnbaum once again after the conversation in December 1995, but claimed she did not learn of defendant's guilty plea until April 1996, when one of her colleagues brought it to her attention, incident to efforts to return defendant to New Jersey. Baglivi further testified that she would not have extended the plea offer to defendant if she knew that defendant had already pled guilty in New York, because the objective of her offer was to induce a plea in both states. Baglivi also stated that she considered Birnbaum's non-response to her December 6, 1995 letter to be a rejection of the plea offer.
*1055 Baglivi further testified that on April 2, 1996, the prosecutor's office began proceedings to bring defendant back to New Jersey under the Interstate Agreement on Detainers ("IAD"). According to Baglivi, defendant would not come to New Jersey "willingly," and the prosecutor abandoned efforts to return defendant under the IAD, "because the defendant was fighting us."[2] As a result, Baglivi stated that she had to move forward with a governor's warrant. The governor's warrant was not presented to Governor Whitman until December 15, 1997.[3]
However, on January 13, 1998, Rosario signed a "Waiver of Extradition," which stated that he agreed to come back to New Jersey by "voluntarily waiv[ing his] rights." According to Baglivi, the "waiver wasn't signed until after [the prosecutor's office] got the governor's warrants." John Pieroni, Esq. ("Pieroni") was assigned as defendant's New Jersey counsel after defendant arrived in Bergen County.
On March 17, 1998, Pieroni sent a letter to Baglivi purporting "to accept [the] plea offer" previously extended by Baglivi in the December 6, 1995 letter, because the "condition" relating to the New York plea had been satisfied. However, according to Pieroni, Baglivi informed him in a follow-up conversation the next day that the plea previously offered to defendant in her letter of December 6, 1995, "had previously been rejected" by defendant, and Pieroni "could confirm this" with Birnbaum. Baglivi also told Pieroni that if defendant now wished to plead guilty, he would have to plead to either felony murder or murder stemming from the event involving Polites on August 5, 1994 and to armed robbery of Hippman on August 4, 1994.
In a second letter sent by Pieroni to Baglivi dated March 24, 1998, Pieroni stated that Birnbaum and defendant informed him that the plea offer embodied in the December 6, 1995 letter "was never rejected, and, in fact, was accepted." Nonetheless, Ms. Baglivi would not honor the offer that was detailed in her December 6, 1995 letter. According to Pieroni:
The principal difference between the plea offer contained in your letter of December 6, 1995, and the plea offer you have now tendered, is that your revised plea offer calls for a mandatory period of parole ineligibility of 30 years. Under the provisions of the plea agreement, as conveyed in your letter of December 6, 1995, the minimum sentence that Mr. Rosario could receive is ten years, the minimum period of parole ineligibility that Mr. Rosario could receive is three and one-third years, the maximum sentence that Mr. Rosario could receive is thirty years, and the maximum period of parole ineligibility that Mr. Rosario could receive is fifteen years.
As a result of the State's refusal to honor the agreement, defendant filed a motion to enforce the plea agreement, which was denied before defendant's trial was conducted following the voluntary waiver of his case as a juvenile to the Law Division.
As previously noted, after defendant's unsuccessful direct appeal, the Supreme Court remanded for "an evidentiary hearing on the enforceability of the plea agreement." State v. Rosario, supra, 167 N.J. at 627, 772 A.2d 930. On remand, after hearing testimony from Birnbaum and Baglivi as outlined above, the trial court denied defendant's motion to enforce the agreement, holding that there was no "meeting of the minds." According to the *1056 judge who conducted the evidentiary hearing:
The plea  this plea in New Jersey was contingent upon a plea to felony murder in New York. Unknown to Ms. Baglivi[,] who testified[,] the defendant already had entered his guilty plea in New York two months earlier on September 27th, 1995.
Nothing in the record indicates the defendant relied upon the New Jersey plea when he accepted the New York plea. Defendant assumes that a plea offer remains open indefinitely. A plea offer is only open for a reasonable period of time.
In March '98 when the defendant was finally brought to New Jersey to trial[,] Ms. Baglivi has indicated this offer was no longer available.
Ms. Baglivi had testified that after the plea negotiations had begun that the State of New Jersey never heard from defense counsel again so Ms. Baglivi considered this plea rejected.
And additionally, it took two years to have the defendant come back to New Jersey[,] which would really make this plea null and void.
In STATE V. WILLIAMS, 277 N.J.Super., Page 40[648 A.2d 1148] 1994, the Court held the defendant could not accept the plea offer if it was withdrawn or has lapsed on its own terms unless it is reoffered and a trial court is without authority to enter a plea based upon a lapsed or withdrawn plea.
Under standard contract law principles[,] a defendant's rejection of a plea offer operates as a termination of the defendant's right to accept the offer.
Defendant has no legal entitlement to a plea bargain. The State is free to withdraw that offer before the agreement is accepted by any court. Similarly, the defendant has no right to require the prosecutor to reoffer a plea which was rejected by the defendant.
If a plea bargain falls apart or is rejected, has no value if the offer  as if the offer had never existed.
I've reviewed all the testimony, the transcripts. And of course I took the testimony from the two attorneys involved, which was Ms. Baglivi in New Jersey and the attorney in New York, Mr. Bir[n]baum [].
I do not find any evidence [in] the record to show there was a meeting of the minds essential to a negotiated plea. There was no indication by the defendant as  to the prosecutor that he already made an agreement in New York. And that the defendant sought to enforce a plea more than two years after it was made.
There was no offer available in March. Therefore, the motion to enforce the plea based upon the evidential hearing is denied.
We reverse the trial court's determination and remand for further proceedings.

II.
When defendant entered his guilty plea in New York on September 27, 1995, there was significant discussion regarding an agreement that had been worked out with the Bergen County Prosecutor's Office as part of a disposition of all open charges.[4] The New York offer of seventeen years to life imprisonment was detailed by Judge J. Kevin Mulroy:
THE COURT: Now, Mr. Rosario, I will set forth this plea that we have entered into today and if you have any *1057 questions about what is said or what something means or have any misunderstanding, you are going to have to bring that to my attention, okay?
Mr. Timmons, here's my understanding of the plea bargain arrangement for this defendant. The District Attorney's office will demand a plea of guilty to the crime of murder in the second degree, felony murder for this defendant. That will satisfy your indictment that charges this defendant with murder and I believe other allegations of robbery and whatnot arising out of an incident that took place 
MR. BIRNBAUM: August 9th, Judge.
THE COURT: August 9th, involving the death of an individual. In return, also as part of that bargain, I have told your attorney I will sentence you to seventeen years to life in prison. This sentence will run concurrently together with some two-to-six sentence you are doing now. The District Attorney's office, as part of this bargain, will demand a waiver of appeal. I will get into what that means. It will demand from now until the time of sentencing, which will be on or about December 15th, they may wish to talk with you. They will expect your cooperation in detailing what was your involvement and the involvement of other people . . . that were with you.
. . . .
My sentence is seventeen to life, waiver of appeal, cooperation with the District Attorney's office in this particular case.
The judge thereafter discussed what he called "another important aspect" of the disposition. The following was then developed with defendant:
THE COURT: All right. There have been discussions with the District Attorney's office in New Jersey. They are prepared to offer you a plea to what they call aggravated manslaughter
MR. TIMMONS: Yes, Judge.
THE COURT:  In return for that plea a Judge is committed to a sentence to seven to thirty years?
MR. TIMMONS: Judge, that is what the prosecutor told me they would recommend to that Judge.

THE COURT: What are the sentencing parameters for that; do you know that?
MR. TIMMONS My understanding was it was seven to thirty. He might be able to get six years. I don't know that for certain, Judge, but it is my understanding they would recommend seven to thirty. They would recommend to the jury and the judge it run consecutive.
THE COURT: Do you understand what it means by "consecutive," on top of a sentence?
THE DEFENDANT: Yes.
THE COURT: The Jersey people will run seven to thirty on top of this. The Judge down there is not bound by the recommendation. He can give you consecutive or concurrent. Do you understand what "concurrent" means?
THE DEFENDANT: Yes.
THE COURT: Basically, Mr. Rosario, it's kind of a crap shoot as to what will happen there. I don't know if you talked to a lawyer down there or what. It's kind of a crap shoot as to what will happen. My only promise to you, sir, is this: If it's anything other than seven to thirty years, be it consecutive or concurrently, then I will let you withdraw your plea on this particular case, okay, because we have not lived up to the bargain we are setting forth for you to induce this plea; do you understand that, sir?

*1058 THE DEFENDANT: Yes.
THE COURT: Okay. The only mystery in New Jersey is whether it's going to run together with this seventeen to life or whether it remains on top of it. I cannot answer that for you. Quite frankly, sir, it is not my concern.
All right.
THE DEFENDANT: I understand.
THE COURT: Okay. Is that the totality of this plea agreement, Mr. Timmons?
MR. TIMMONS: Yes, Judge.
THE COURT: Is it your understanding, Mr. Birnbaum?
MR. BIRNBAUM: May I approach with Mr. Timmons to get two points straight?
THE COURT: Okay, sure.
(Discussion off the record.)
THE COURT: Mr. Rosario, there is also another robbery, I think, offense in New Jersey that they are interested in perhaps charging you with. I understand that there is a seven to thirty commitment from New Jersey, be it consecutive or concurrent, will include that robbery. You may have to plead guilty to a robbery but the seven to thirty is going to apply to both your involvement in the homicide and in the robbery; do you understand that, sir?
THE DEFENDANT: Yes, I understand.
THE COURT: Do you understand again, sir, I emphasize it, it will not upset this bargain if that Judge gives you consecutive. It's not going to upset this thing. The only thing that will upset this bargain is if the Judge gives you more time than the seven to thirty sentence, be it consecutive or concurrent; do you understand that, sir?
THE DEFENDANT: Yes, I understand.
THE COURT: Okay. All right. Now, Mr. Birnbaum, is that your understanding of the plea bargain arrangement you worked out here today?
MR. BIRNBAUM: Yes, Your Honor. (Emphasis added.)
Because defendant was a juvenile, not yet charged in New Jersey, incarcerated in New York without counsel in New Jersey and all the details necessary for a disposition in New Jersey had not been finalized, Judge Mulroy wanted "to know" before sentencing "what is really going to happen in New Jersey," because he "wouldn't even bother with the sentence" and would let defendant move to withdraw his plea if there was no agreement. Judge Mulroy also believed that the prosecutor would "need a commitment from a Judge," in New Jersey, but the parties expected that all terms of defendant's New Jersey plea would be finalized before the December 15, 1995 sentencing date in New York so that the parties would know if the negotiated plea could be honored there. Timmons noted that "it was the D.A.'s office in New Jersey that would hold up a plea there. We were discussing it was not going to be the bench's problem with giving him what defense counsel is looking for." Timmons stated he would "talk to the Jersey prosecutor immediately."
Defendant then acknowledged that he and his New Jersey co-defendants bound, taped, and stabbed a man in Suffolk County in August 2004 during the course of an armed robbery.

III.
The State argues that the trial court correctly denied defendant's motion to enforce the plea agreement because Assistant Prosecutor Baglivi had no knowledge of the New York plea until after it happened, and as such, the New Jersey plea which she offered to defendant could not have been relied upon, as it was extended after defendant had already pled guilty in *1059 New York. Stated differently, the State asserts that the New Jersey offer could not have been relied upon for the murder plea in New York because the New Jersey offer was extended after the New York plea was entered. Moreover, according to the prosecutor, defendant rejected the offer by fighting efforts to return to New Jersey to execute it and allowing over two years to pass before endeavoring to accept it on the eve of trial in New Jersey.
However, the judge, on remand, made no findings of credibility and certainly did not reject the credibility of attorney Birnbaum. Moreover, the record contains no documentary support for the claim  contested by defendant  that he was unwilling to return to New Jersey to consummate the offer. It is significant in this respect that defendant had no attorney on the New Jersey charges to assist in efforts to bring him here. Defendant was assigned counsel only after he waived extradition and was returned to Bergen County. But perhaps more importantly, the prosecutor recalled no negotiations until she talked with Birnbaum on December 5, 1995 and wrote the letter of December 6, 1995, while the transcript of the September 27, 1995 plea in New York reflects the fact that District Attorney Timmons had spoken with Baglivi and secured an understanding that both parties had relied on in consummating the plea offer in New York.[5] While both witnesses at the remand hearing appeared to be credible, Baglivi had no notes or records in her file about communications she had on the subject. On the other hand, the record in the New York proceedings, including the comments of the District Attorney, clearly support and enhance the credibility of Birnbaum.
The judge below and prosecutor emphasize, however, that the New York plea was entered before the offer was made by the prosecutor on December 6, 1995, and as a result, defendant could not have relied on it before it was rejected or withdrawn. However, independent of the obvious reliance on the oral communication as detailed in the record of the New York plea, what seems to be forgotten is the fact that both the District Attorney and defense counsel, as well as Judge Mulroy in New York, asked for confirmation of the New Jersey plea offer in advance of the December 1995 sentencing date as a condition of going forward with the disposition in New York.[6] Accordingly, there was reliance on the December 6, 1995 letter in terms of going forward in New York. Under the circumstances, and given the record before us, we will not jeopardize the New York plea, which defendant can withdraw, and shall enforce the New Jersey agreement if defendant enters the negotiated plea.
"When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971). As the prosecutor candidly states before us, "[a] defendant may enforce a plea offer which has not been approved by the court when the defendant can make a showing of detrimental reliance upon the prosecutorial promise," citing e.g., State v. Johnson, 617 N.W.2d 440, 443 (Minn.Ct. App.2000); Reed v. Becka, 333 S.C. 676, 511 S.E.2d 396, 402-03 (1999). A defendant must, however, do something substantial *1060 to his disadvantage in reliance on the offer. State v. Johnson, supra, 617 N.W.2d at 443; Reed v. Becka, supra, 511 S.E.2d at 402-03. In such circumstances, as with honoring the terms of any negotiated disposition, the reasonable expectations of the defendant must be carried out. State v. Thomas, 61 N.J. 314, 323, 294 A.2d 57 (1972). We recognize that negotiated pleas must be approved by the court and are generally non-enforceable until approved by the judge. State v. Williams, 277 N.J.Super. 40, 47, 648 A.2d 1148 (App. Div.1994); R. 3:9-3(c)(e). However, here, because defendant was confined out-of-state when the offer was made by the prosecutor, the plea could not then have been entered in New Jersey. Despite this, defendant clearly relied on the offer when entering his guilty plea to murder in New York. As defendant fulfilled his obligation under the offer by pleading guilty in New York and did not withdraw the New York plea as he had the right to do if the plea offer was not honored in New Jersey, we believe his "reasonable expectations" must be fulfilled by enforcement of the New Jersey plea agreement, as detailed in the prosecutor's letter of December 6, 1995, and consideration of its acceptance by a judge in New Jersey. See State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988); State v. Davis, 244 N.J.Super. 180, 193, 581 A.2d 1333 (App.Div.1990). See also R. 3:9-3(c)(e).
We recognize that we previously rejected the same claim on defendant's direct appeal. However, we now have the benefit of the evidentiary hearing ordered by the Supreme Court, and we conclude that defendant has a right to rely on the offer by virtue of his plea in New York, which the record confirms was part of a total bi-state disposition. We also recognize that the plea judge can always reject a plea agreement, and generally defendant has no right to require the judge to accept it. R. 3:9-3(e). However, in these circumstances, fairness and rightness may preclude such a rejection, an issue we need not decide if the negotiated recommendation is accepted. More than eleven years have passed since the offer was made, as defendant was sentenced in New York over ten years ago, and we should not jeopardize the New York disposition which was contingent upon adherence to the New Jersey offer. As noted, the record is clear that defendant can withdraw his New York plea if the New Jersey offer is not honored. In that context, Assistant Prosecutor Baglivi testified that her offer was designed to induce a disposition in both states. By virtue of our disposition, that endeavor will be accomplished.[7]
Moreover, if the offer, in the prosecutor's view, constituted sufficient and appropriate justice in 1995 for crimes committed while the defendant was a juvenile, we fail to see any basis why the offer would not still be fair and appropriate justice, conditioned upon the guilty plea, sentence exposure, and actual sentence imposed in New *1061 York, as contemplated by the parties. As Assistant Prosecutor Baglivi had communicated an offer which he relied on, and New Jersey's condition for its offer (a plea to murder in New York) was satisfied, we see no basis in law or equity to hold that the offer was unenforceable merely because it was not placed in writing before it was accepted.
When defendant pled guilty in New York, he did so in reliance upon his lawyer's advice and the word of the prosecutor in New York, both of whom had been in communication with the New Jersey prosecutor. Defendant reasonably believed that he would be able to plead guilty to reduced charges in New Jersey, because he would be sentenced for murder in New York. According to Birnbaum, it was defendant's "unequivocal" intention to accept the New Jersey offer, and there is nothing in the record to suggest that defendant ever rejected the offer.

IV.
In sum, we decline to cause a result that could vacate the disposition of a homicide case in New York. In either event, a homicide conviction will be preserved here. The New Jersey conviction is reversed, contingent upon defendant's entering a guilty plea with an adequate factual basis to aggravated manslaughter and armed robbery, after which he may be sentenced subject to the maximum sentence authorized by the December 6, 1995 letter. If for some reason not contemplated by us, the factual basis is inadequate, a voluntary, intelligent, and knowing plea is not forthcoming, or the plea is rejected by the trial judge, defendant is not entitled to a new trial in New Jersey. In that situation, the convictions and sentence previously upheld shall stand, subject to appellate review of the further proceedings to be held in the case.
Reversed and remanded for proceedings consistent with this opinion.
NOTES
[1] The convictions included the kidnapping and armed robbery of Robert Hippman on August 4, 1994, in addition to purposeful or knowing murder and felony murder during a kidnapping and armed robbery of James Polites, and related weapons offenses. No issue is raised concerning the trial in light of the prior appellate proceedings. The essential facts are detailed in our opinion concerning the prior trial of a co-conspirator, State v. Farthing, 331 N.J.Super. 58, 751 A.2d 123 (App.Div.), certif. denied, 165 N.J. 530, 760 A.2d 784 (2000). Defendant was also involved in an armed robbery and murder occurring in New York on August 9, 1994.
[2] There is nothing in the record other than Baglivi's statements to support this allegation.
[3] It was also executed by Governor Pataki on December 16, 1997.
[4] We have reviewed the plea transcript of September 27, 2005 in The People of the State of New York v. Benigno Rosario, case # 0811D-95. Timmons and Birnbaum appeared therein before Judge J. Kevin Mulroy.
[5] Baglivi testified she had traveled to New York for proceedings involving co-defendants and spoke with Birnbaum and Timmons several times but had no notes or recollection of the conversations.
[6] The New York sentencing transcript has not been submitted to us, but it appears from the record that defendant was sentenced to 17 years to life imprisonment in New York by Judge Gary J. Weber in February 1996.
[7] There is a question as to what was meant by a "seven to thirty" year sentence when described in New York, namely whether it intended to relate to the maximum term or whether the seven related to a minimum or parole ineligibility term. But while the authorized thirty year sentence, with fifteen years before parole eligibility, may be greater than what was developed on the record in New York, defendant advised us at oral argument that he has no intention to withdraw his New York plea if the New Jersey offer is enforced. Moreover, and significantly, the New York sentence was imposed after the December 6, 1995 letter detailed the offer, and no further proceedings occurred in New York, to withdraw the plea or otherwise, premised on some misunderstanding of the New Jersey offer or belief that it was inconsistent with the parties' understanding at the time of plea. Any differences or inconsistencies are simply "immaterial," and no one argues otherwise.